# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2903

———————

| | | |
|---|---|---|
| Triple H Debris Removal, Inc., | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas. |
| | * | |
| Companion Property and Casualty | * | |
| Insurance Company, | * | |
| | * | |
| Defendant-Appellee. | * | |

———————

Submitted: April 14, 2011
Filed: August 2, 2011

———————

Before WOLLMAN, GILMAN[1] and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

This is the second time this case has come before this Court.[2] This case involves a dispute between Companion Property and Casualty Insurance Company

---

[1]The Honorable Ronald Lee Gilman, United States Circuit Judge of the Court of Appeals for the Sixth Circuit, sitting by designation.

[2]Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co., 560 F.3d 881 (8th Cir. 2009) (reversing the district court's grant of Companion's motion for summary judgment and remanding for further proceedings).

and Triple H Debris Removal, Inc. over the cancellation of a workers' compensation insurance policy based on an unpaid premium. This case was tried to a jury and the jury returned a verdict in favor of Companion. On appeal, Triple H claims (1) the district court[3] erred in denying Triple H's motion to take judicial notice of an agency relationship, (2) the district court erred in denying Triple H's motion for a directed verdict, (3) the district court erred in instructing the jury, and (4) the jury's verdict and the district court's order in favor of Companion were not supported by sufficient evidence. We affirm.

## I. BACKGROUND

Companion issued an initial workers' compensation insurance policy to Triple H, covering the period April 21, 2005 through April 21, 2006 ("Policy One"). Because the premium for the workers' compensation insurance was based on actual payroll, the initial premium was an estimate of Triple H's projected payroll. As a result, Policy One allowed Companion to conduct periodic audits of Triple H to adjust the insurance premium.

After the first audit in this case, Companion discovered that Triple H's work consisted of different tasks than what Companion had originally understood. Therefore, Triple H's classification code changed, which resulted in an increased premium rate. With the new rate, Companion recalculated the Policy One estimated premium, issued an endorsement to the insurance policy, and sent an invoice to Triple H for the additional premium owed.

Triple H does not now dispute the increased premium rate. However, Triple H did not pay the additional premium; therefore, Companion sent a cancellation notice

[3]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

to Triple H on Policy One. As a result, Companion cancelled Policy One, effective as of August 21, 2005.

Even though Policy One was cancelled, Triple H issued a check to Companion for the outstanding premium amount owed on Policy One. As a result, Companion agreed to issue a second insurance policy to Triple H, covering the period September 15, 2005 through April 21, 2006 ("Policy Two").

Additionally, Companion hired a vendor to conduct a final premium audit on Policy One. Based on the final audit results, Companion sent Triple H a final audit calculation for Policy One on December 7, 2005. The final audit premium for Policy One resulted in an invoice to Triple H of $1,853.00. Companion included a copy of Companion's "Requirements for Filing Premium Disputes on Audits and Endorsements Based on Audits" ("Dispute Resolution Protocol") with the invoice. Companion's Dispute Resolution Protocol required Triple H to raise a "bona fide dispute" to avoid a breach and continue Triple H's workers' compensation insurance coverage whenever Triple H disputed the audit premium.[4]

Triple H did not agree with Companion's $1,853.00 outstanding premium calculation. Therefore, on December 29, 2005, Triple H provided Janice Watkins, a local insurance agent at Steve Standridge Insurance Agency, with information to

---

[4]The parties agree that this Dispute Resolution Protocol was part of Policy Two. The Dispute Resolution Protocol stated: "If you dispute all or any portion of this bill, you must comply with the following procedures for raising a 'bona fide dispute': (1) Provide a detailed written explanation of why you believe your bill is incorrect, and (2) Provide a detailed explanation of your estimate of what the premium should be, and (3) Pay any undisputed portions of the premium owed by the due date on this bill." Additionally, the Dispute Resolution Protocol stated, "You must follow the above procedure in order to suspend future billing and collection activities while your dispute is being resolved and to ensure that your workers' compensation coverage remains in effect while your dispute is being resolved."

dispute the $1,853.00 premium owed. Watkins then sent Companion a fax with Triple H's information to dispute the $1,853.00 outstanding premium.

On January 3, 2006, Companion sent Triple H a notice of cancellation of Policy Two, effective January 15, 2006. Companion's stated reason for cancellation of Policy Two was "uncollectible audit" on Policy One. Companion did not have proof of the mailing date of this notice; however, the return receipt showed that Triple H signed for the notice of cancellation on January 7, 2006.

On February 7, 2006, Companion conducted its first review of Watkins's fax regarding Triple H's dispute. On February 10, 2006, Companion and Watkins had a telephone conversation about the audit dispute, and Companion confirmed the contents of this discussion in a fax to Watkins. In Companion's fax, Companion maintained that Policy Two terminated as of January 15, 2006.

On February 16, 2006, a Triple H employee suffered a serious work-related injury. Triple H gave notice of the injury to Companion on February 22, 2006, but Companion denied coverage for the injury on the basis that Policy Two terminated as of January 15, 2006.

On March 9, 2006, Triple H paid the disputed $1,853.00 audit premium for Policy One, and Triple H filed this lawsuit the same day.

Shortly after the lawsuit began, Companion moved for summary judgment, and the district court granted Companion's motion. Triple H timely appealed the summary judgment. Viewing the evidence in the light most favorable to Triple H, we determined there existed a genuine issue of material fact as to whether Triple H was in substantial compliance with the Dispute Resolution Protocol and, as a result, whether Policy Two was properly cancelled. Therefore, we reversed and remanded the case to the district court.

Prior to trial, Triple H filed a motion for partial summary judgment, which the district court denied. Triple H also filed a pretrial motion to take judicial notice of a statement that Companion's counsel had made in front of this Court during oral arguments in the first appeal. Specifically, Companion's counsel stated that Watkins was an agent of Companion and "could serve as a conduit" to communicate with Companion. The district court denied Triple H's motion to take judicial notice.

At trial, there were two underlying issues for the jury to consider: (1) did Companion properly cancel Policy Two, and (2) did Triple H raise a bona fide dispute with Companion as to Policy One? These two issues were related in that Triple H argued that if it raised a bona fide dispute, then Companion would have had no right to cancel Policy Two during the dispute-resolution period.

Regarding the first issue, Triple H relied on Companion's lack of proof of mailing the notice of cancellation. Accordingly, Triple H argued that Companion's notice of cancellation was ineffective because Companion did not give Triple H an appropriate ten-day notice period. In response, while Companion did not have proof of mailing the notice, Companion produced evidence showing that Triple H actually received the notice on January 7, 2006; therefore, Companion cancelled Policy Two on or before January 17, 2006 at the latest.

Regarding the second issue, Triple H argued that if it raised a bona fide dispute, Companion had no right to cancel Policy Two in January. Rather, Policy Two would have remained in effect during a dispute period that Triple H claims ended on February 10, 2006, when Companion sent a responsive fax to Watkins. Triple H attempted to prove that: (1) the information Triple H provided Companion was sufficient to raise a bona fide dispute, and (2) if it was not sufficient, Watkins was acting as Companion's agent when Watkins drafted her December 29, 2005 fax to Companion. According to Triple H, if Watkins was Companion's agent, then Triple H should be excused from raising a bona fide dispute because a Companion agent was

at least partially responsible for not meeting the bona-fide-dispute requirements in accordance with the Dispute Resolution Protocol.

Both parties agreed that the Dispute Resolution Protocol clearly listed three requirements in order for Triple H to raise a bona fide dispute, and that Triple H had to meet all three. Triple H argued that it disputed the entire amount of the outstanding premium and met all three elements. However, Companion argued that Triple H never provided Companion a detailed explanation of why it thought the premium was incorrect. As a result, according to Companion, Triple H failed to meet all three requirements.

Regarding the agency issue, Companion's representative testified that Watkins was not Companion's agent as to Policy One or Policy Two. In contrast, none of Triple H's witnesses testified that Watkins was Companion's agent, nor did Triple H call Watkins as a witness to testify about her agency status.

At the conclusion of the evidence, Triple H moved for a directed verdict, arguing that Companion had failed to establish when it mailed the notice of cancellation of Policy Two, making the notice of cancellation invalid. The district court denied Triple H's motion for a directed verdict. The jury then returned a verdict in favor of Companion.

## II. DISCUSSION

On appeal, we review the evidence in the light most favorable to the jury's verdict, giving Companion the benefit of all favorable inferences that may reasonably be drawn from the facts. See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1009 (8th Cir. 2008).

## A. Judicial Notice

We review a district court's denial of a motion to take judicial notice for abuse of discretion.  Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 796 (8th Cir. 2009).

On appeal, Triple H references two pre-trial instances wherein Companion stated that Watkins was Companion's agent.  First, Triple H argues that the district court should have taken judicial notice of Companion's counsel's statement during oral arguments in the first appeal.  Companion's counsel stated that Watkins "was an agent, actually, of the insurance company, but certainly he [sic] could serve as a conduit in this case, and act as an agent of the insured."

Although a court can take judicial notice of a statement made during oral arguments or in court, Triple H's real argument appears to be that counsel's statement served as an admission or stipulation of fact that warrants the application of judicial estoppel.  We also review the district court's denial of judicial estoppel for abuse of discretion.  Capella Univ., Inc. v. Exec. Risk Speciality Ins. Co., 617 F.3d 1040, 1051 (8th Cir. 2010).

In Capella, this Court recognized that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." Id. (citation omitted). Here, when this case was first before this Court, we ruled in favor of Triple H and reversed the district court's grant of summary judgment.  Therefore, Companion did not succeed and Companion's counsel's statement does not threaten the integrity of the judicial system.  Additionally, the district court had discretion to determine that Triple H would have had an unfair advantage if the court relied on the statement made by

Companion's counsel, especially when Companion alleged it could prove the statement was an incorrect statement under Arkansas law.[5] See id.

Second, Triple H argues that Companion admitted that Watkins was Companion's agent in Companion's responsive pleadings to Triple H's motion for summary judgment after the first appeal. In Johnson International Co. v. Jackson National Life Ins. Co., 19 F.3d 431, 434 (8th Cir. 1994), however, this Court determined that once a trial has taken place, the focus is on the evidence actually admitted at trial and not on the earlier pretrial filings that support the summary judgment record. In fact, a non-moving party may elect not to contest certain facts solely for purposes of summary judgment. The 2010 revised Rule 56 advisory committee's notes directly address this issue. Revised Rule 56(g) (formerly Rule 56(d)(1)) provides that if a district court does not grant "all the relief requested" by a motion for summary judgment, the court may enter an order setting forth any material fact not in dispute. Fed. R. Civ. P. 56(g). However, the commentary to Rule 56(g) states: "The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only." Fed. R. Civ. P. 56 advisory committee's notes (2010). For example, the non-moving party may decide to avoid the cost of disputing a fact. Id. Additionally, it remains in the court's

---

[5]It appears the agency confusion arose because Watkins's agency status changes based on whether the policy is issued in the voluntary market or in the assigned-risk market. Both Policy One and Policy Two were issued in the assigned-risk market. Arkansas Insurance Department Rule and Regulation 54 covers policies issued in the assigned-risk market, and the purpose of Rule and Regulation 54 is to "assure coverage for employers who are in good faith entitled, but unable to procure, workers' compensation and employers' liability insurance in the voluntary market . . . ." 054-00-54 Ark. Code R. § 3. The Rule and Regulation further provides that, in the assigned-risk market, a "producer," such as Watkins, shall "be considered to be acting on behalf of the insured [Triple H] or employer applying under the Plan and not as an agent of the Plan Administrator or of any assigned carrier [Companion] for Plan business." Id. § 4(L).

discretion whether to file such an order. Id. "The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial . . . ." Id.

Therefore, due to the nature of summary judgment proceedings and the district court's cautionary belief that the agency issue remained a litigated issue for the jury's determination, the district court did not abuse its discretion. We affirm the district court's denial of Triple H's motion to take judicial notice.

## B. Jury Instructions

We review a district court's jury instructions for abuse of discretion. Lighting & Power Servs., Inc. v. Roberts, 354 F.3d 817, 819 (8th Cir. 2004). "Our review is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury. We will not reverse for instructional error unless we find that the error affected the substantial rights of the parties." Id. at 819–20 (citation omitted).

Triple H argues that the district court erred in instructing the jury concerning the issues of agency, breach of contract, and ambiguity of contract. We agree with Companion that the district court properly instructed the jury and that any error, if present, was harmless.

### 1. Agency Issue; Jury Instruction Nos. 13 and 14

Triple H challenged the district court's jury instruction Nos. 13 and 14, concerning the definition of an "agent" and the "agency issue" presented in this case. However, Triple H's objection consisted of reiterating the arguments that Triple H made in its motion to take judicial notice. Before ruling, the district court confirmed

that Triple H's objections served merely as a request for the court to rule as a matter of law as to Watkins's agency relationship with Companion.  The district court refused to rule as a matter of law, and Triple H did not have any further challenges to jury instruction Nos. 13 and 14.  Accordingly, in view of our affirmance of the district court's denial of Triple H's motion to take judicial notice, we need not address this issue further.

## 2.  Breach of Contract; Jury Instruction No. 15 and Interrogatory No. 2

Triple H objected to jury instruction No. 15, which set forth the three requirements for Triple H to raise a "bona fide dispute" under the contract.  In addition, it instructed:  "A finding that the Triple H Debris Removal, Inc., failed to raise a 'bona fide dispute' is a breach of its contract."  However, instruction No. 10 properly instructed the jury that Triple H breached the contract if it failed to do what the contract required.  We reject the challenge to instruction No. 15 as it correctly instructed the jury as to the nature of the dispute on the breach-of-contract claim.  Instruction No. 15 was a correct statement of the law and did not shift any burden that Triple H did not already have.

Additionally, Triple H objected to interrogatory No. 2[6] because Triple H alleged interrogatory No. 2 shifted the burden of Companion's affirmative defense to Triple H.  However, Triple H did not object to verdict form interrogatory No. 1.[7]

_____

[6]Interrogatory No. 2 states:  "If you answer 'No' to Interrogatory No. 1, do you find from a preponderance of the evidence that Plaintiff, Triple H. Debris Removal, Inc., followed the procedures to dispute the additional billing as set out in the policy, and statutes of the state of Arkansas?"

[7]Interrogatory No. 1 states:  "Do you find from a preponderance of the evidence that Defendant, Companion Property and Casualty Insurance Company, cancelled the policy with Plaintiff, Triple H Debris Removal, Inc., in accordance with the terms and conditions of the policy, and statutes of the state of Arkansas?  If your answer to

Accordingly, because the jury answered "yes" to interrogatory No. 1, the jury did not consider interrogatory No. 2. Therefore, any error related to interrogatory No. 2 is harmless. <u>Cates v. Brown</u>, 645 S.W.2d 658, 661 (Ark. 1983) ("The giving of an erroneous instruction is harmless error where the jury was not misled or the jury rejects the theory of the instruction.").

## 3. Ambiguity of Contract

Triple H argues that the district court erred when it refused Triple H's three proffered jury instructions regarding ambiguous contract provisions. The district court did not give any reason for the refusal to tender Triple H's requested instructions. However, it appears from the court's rejection of Triple H's proffered jury instructions that the court found the contract language to be unambiguous.

Whether the contract language is ambiguous is a question of law for the court. <u>Nichols v. Farmers Ins. Co.</u>, 128 S.W.3d 1, 4 (Ark. Ct. App. 2003). Accordingly, "where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law." <u>Id.</u> Here, the district court found no ambiguity in the insurance contract language, and the record supports a determination that the parties' arguments were based on the contract language itself. Therefore, the district court did not err in rejecting Triple H's proffered jury instructions regarding allegedly ambiguous contract provisions.

---

Interrogatory No. 1 is 'YES,' please have your foreperson sign and date this form and return to the courtroom, because you have completed your deliberations. If your answer to Interrogatory No. 1 is 'NO,' please proceed to Interrogatory No. 2."

## C. Sufficiency of the Evidence

Triple H argues that the jury's verdict and the district court's order in favor of Companion are not supported by sufficient evidence. We disagree. "[W]e will not set [a jury's verdict] aside unless no reasonable jury could have reached the same verdict based on the evidence submitted . . . ." Craig, 528 F.3d at 1009 (citation omitted).

As stated previously, two underlying issues exist in this case, namely whether Companion properly cancelled Policy Two and whether Triple H raised a bona fide dispute with Companion under Policy One. With respect to the first issue, the parties contest whether Companion properly cancelled Policy Two. However, the parties do not contest that the language of both Policy Two[8] and Arkansas Code § 11-9-408[9] apply to this case. Both require ten-days' notice. Based upon the evidence at trial, including witness testimony, the jury could have determined that January 15, 2006, was the effective cancellation date—as the notice of cancellation stated—because the notice was mailed more than ten days earlier. Indeed, the issue date on the notice was

---

[8]"We[, Companion,] may cancel this policy. If we cancel because you fail to pay all premium when due, we will mail or deliver to you and to the Arkansas Workers Compensation Commission not less than 10 days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you and to the Arkansas Workers Compensation Commission not less than 30 days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient notice."

[9]"A carrier shall not cancel coverage issued to an employer under this chapter prior to the date specified for expiration in the policy or contract or until at least thirty (30) days have elapsed after a notice of cancellation has been mailed to the Workers' Compensation Commission and to the employer, or until ten (10) days have elapsed after the notice has been mailed to the employer and to the commission if the cancellation is for nonpayment of premium." Ark. Code Ann. § 11-9-408(b)(2)(B) (West 2010).

January 3, 2006, and the jury could have found that the notice was mailed on that day because Triple H received the notice on January 7, 2006. Consequently, given the standard of review, we believe sufficient evidence existed to support the jury's verdict on this issue.

Turning to the second issue, the parties dispute whether Triple H met the requirements to raise a "bona fide dispute" with Companion. Because Triple H disputed Companion's invoice requesting an additional $1,853.00 for the outstanding premium on Policy One, Mrs. Hattabaugh, President of Triple H, contacted Watkins. On December 29, 2005, Watkins sent Companion a fax that stated: "Mrs. Hattabaugh has brought the attached payroll information in to be faxed to you. She is stating that this is all the payroll for the time they have worked in this policy period. It is not a quarterly report. Therefore they do not feel that this is correct."

It was undisputed that Triple H provided Watkins with information to dispute the outstanding premium and that Watkins then faxed the information to Companion to dispute the outstanding premium. However, two questions remained for the jury: (1) was the information sufficient to raise a bona fide dispute, and (2) if not, was Watkins acting as Companion's agent when Watkins drafted her fax to Companion?

First, the jury could have reasonably concluded that Triple H did not present sufficient evidence that Triple H met all three bona-fide-dispute requirements. Triple H maintained that it owed no additional premium and was disputing the entire $1,853.00; however, Triple H did not provide Companion with a detailed explanation of why Triple H believed the $1,853.00 invoice was incorrect and why Triple H owed nothing. Triple H merely provided raw data without explanation.

Companion testified at trial that with every premium notice change, Companion attached an information page that showed Companion's detailed premium calculations. Therefore, Triple H had the premium equation available to provide a detailed bona-

-13-

fide-dispute explanation to Companion. However, in Watkins's fax to Companion, Triple H merely provided Companion with Triple H's payroll records and stated Companion was incorrect. Additionally, even at trial, when Triple H's representatives were questioned, they still could not provide a detailed explanation of why the invoice was incorrect. Moreover, Companion testified that Companion's review of the payroll records that Triple H provided actually showed that Triple H owed more than the $1,853.00 disputed amount, not zero as Triple H claimed.

Additionally, Triple H argued that Companion failed to notify Triple H or Watkins that Triple H needed additional information in order to meet the bona-fide-dispute requirements. However, nothing in the contract required Companion to notify Triple H if Triple H failed to provide enough information to raise a bona fide dispute.

Second, in regards to the agency issue, the jury could have reasonably concluded that Watkins was not Companion's agent. A Companion representative testified at trial that Watkins was Companion's agent as to certain insurance policies; however, the representative also testified that Watkins was not Companion's agent as to the insurance policies at issue in this case. Additionally, Companion quoted Arkansas Insurance Department Rule and Regulation 54, which showed, as a matter of law, that Watkins was in fact Triple H's agent.

Accordingly, the evidence was sufficient for the jury to find that Companion properly cancelled Policy Two and that Triple H failed to raise a bona fide dispute as to the premium owed.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

_____