966 F.2d 1250
 NATIONAL FARMERS UNION STANDARD INSURANCE COMPANY, Appellant
and Cross-Appellee,
v.
Walker Stanley MORGAN, Appellee,
Brenda Morgan, Individually and as Parent, Next Friend, and
Natural Guardian of Danny D. Stultz, Jr., a minor, Clarence
Alford, Jr., Individually and as Legal Custodian of Danny D.
Stultz, Jr., a minor, Appellees and Cross-Appellants,
Leslie M. Greenhaw, James McCauley, as Guardian ad Litem of
Billy Stultz, a minor, Linda Cummings, as Parent, Next
Friend, and Natural Guardian of Sharon Bledsoe, a minor,
Jimmy Ray McKee, Individually and as Parent, Next Friend,
and Natural Guardian of Gina McKee, a minor, and as
Administrator of the Estate of Heather McKee, deceased,
Linda McKee, and Robin McKee, Appellees.
 Nos. 91-3370, 91-3481.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1992.
Decided June 15, 1992.
Rehearing and Rehearing En Banc
Denied July 30, 1992.
 
 1
 Martin Wayne Bowen, West Memphis, Ark., argued, for appellant and cross-appellee.
 
 
 2
 B. Michael Easley, Forrest City, Ark., argued, for appellee Linda Cummings.
 
 
 3
 Bob R. Brooks, Jr., North Little Rock, Ark., argued, for appellees and cross-appellants Clarence Alford and Brenda Morgan.
 
 
 4
 Bob R. Brooks, Jr., North Little Rock, Ark., on brief for appellees.
 
 
 5
 Before JOHN R. GIBSON, Circuit Judge, BEAM, Circuit Judge, and HUNGATE,* Senior District Judge.
 
 
 6
 HUNGATE, Senior District Judge.
 
 
 7
 These cross-appeals arise from an action brought by the appellant insurer seeking a declaratory judgment that it has no duty to defend or to pay any judgment rendered in a state court action against appellees/cross-appellants Clarence Alford, Jr. ("Clarence"), Brenda Morgan ("Brenda") and Danny D. Stultz, Jr. ("Danny").[1] The underlying state court action arose out of a collision involving a pick-up truck owned by Clarence and driven by Danny, a teenager. Clarence lives in Forrest City, Arkansas, where the accident took place; he is Danny's grandfather and legal guardian, and Danny was staying with Clarence at the time of the accident. Brenda is Danny's mother and Clarence's daughter. Appellee Walker Stanley Morgan ("Walker") was Brenda's husband and Danny's step-father; he is the policyholder of the insurance policy in question. Brenda and Walker were separated at the time of the accident, but both were living in Mississippi.[2]
 
 
 8
 The insurance coverage issue focuses on two policy provisions that define the insureds. Under the policy, Danny is covered as a "relative" of Walker's if at the time of the accident he was "a person living in [Walker's] household [and] related to [Walker] by blood, marriage or adoption, including a ward or foster child." The policy further provides, however, that "[n]o person shall be considered an insured person if that person uses a vehicle without a reasonable belief of having permission to use the vehicle." The verdict form submitted to the jury asked whether they found that, on the day of the accident, (1) Danny was living in the household of Walker and (2) Danny reasonably believed he had Clarence's permission to use the pick-up truck. The jury answered both questions in the affirmative, and the district judge initially entered judgment in favor of defendants.
 
 
 9
 Clarence, Brenda and Danny timely moved to amend the judgment to include declaratory relief in their favor, i.e., to include a declaration that National Farmers Union ("NFU") had a duty to defend and a duty to pay any judgment. NFU did not respond to the motion. The district court granted the motion and entered a "modified and substituted judgment" declaring NFU's duties with respect to the underlying state court action. The district court denied NFU's motion for judgment notwithstanding the verdict or in the alternative for new trial, as well as a motion for attorney's fees filed by Brenda, Danny and Clarence.
 
 
 10
 NFU appeals (1) the granting of the motion to amend the judgment and the entry of the modified and substituted judgment, (2) the denial of NFU's motion for summary judgment on the issue of collateral estoppel, (3) the denial of NFU's motion for judgment notwithstanding the verdict, and (4) the denial of NFU's motion for new trial. Clarence, Brenda and Danny cross-appeal, arguing that the district court erred in denying their motion for attorneys' fees. Because we find that NFU's motion for summary judgment was wrongly denied, the remaining issues on appeal are mooted.
 
 
 11
 The Court of Appeals makes a de novo review of the denial of summary judgment. See, e.g., Holloway v. Conger, 896 F.2d 1131, 1134 (8th Cir.1990). NFU moved for summary judgment on collateral estoppel grounds, asserting that in another Eastern District of Arkansas action brought by Danny and Clarence against an insurance salesman and his agency, Stultz and Alford v. Greer and Greer & White Insurance, Inc. ("Greer"), Civil No. J-C-90-131, a conclusive determination was made that Danny had no permission to operate Clarence's truck on the day of the accident.
 
 
 12
 In Greer, the written judgment of the Honorable G. Thomas Eisele, entered on the court's grant of the defendants' motions for directed verdict, contained the following language apropos of the permission issue:
 
 
 13
 Mr. Stultz testified that he did not have Mr. Alford's permission to drive the 1981 Chevrolet pickup on the day of the accident. He further testified that he knew he would not be covered by insurance if he drove the pickup truck without permission. Thus, Mr. Stultz was not relying on Mr. Greer's alleged representation that he was covered by insurance regardless of the vehicle he was driving. He knew he was driving without insurance coverage that day and he chose to do so.
 
 
 14
 . . . . .
 
 
 15
 It could be argued that Mr. Alford gave Mr. Stultz implied consent to drive the 1981 Chevrolet. He had in the past given Mr. Stultz permission to drive the pickup, but that consent was limited to situations where a licensed driver was also present in the pickup. Mr. Alford testified that he never permitted Mr. Stultz to drive the pickup alone. Therefore, even if one assumes that Mr. Stultz had implied consent or previous permission to drive the vehicle, he exceeded the scope of that permission by driving without a licensed driver in the truck. As a result, Mr. Stultz was not insured as insurance coverage is available only if one has permission of the owner.
 
 
 16
 The Greer action involved claims by Clarence and Danny that the defendant insurance agent and agency were negligent and committed fraud in connection with selling Clarence an auto policy which admittedly failed to cover Danny's accident. The above-excerpted portions of Judge Eisele's judgment are found in his discussion of Clarence and Danny's failure to establish their reliance on the allegedly fraudulent misrepresentation concerning coverage.
 
 
 17
 Although he did not articulate his opinion in those terms, it is clear from the above excerpts that Judge Eisele was making factual findings. In the first excerpted paragraph, Judge Eisele made a finding that when Danny took the truck on the day of the accident, he knew he was doing so without Clarence's permission. In the second paragraph, Judge Eisele is indirectly stating a finding that, at most, Danny had Clarence's implied conditional consent to drive the truck when he had a licensed driver with him, but that when Danny took the truck on the day of the accident that condition was not met.
 
 
 18
 Arkansas law governs the question of collateral estoppel. See Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir.1990). As the Court noted in Lane, however, "Arkansas law ... characterize[s] the elements of collateral estoppel in familiar language." Id. Under Arkansas law, the four elements of collateral estoppel, or issue preclusion, are that:
 
 
 19
 (1) the issue is the same as that involved in a prior litigation;
 
 
 20
 (2) the issue was actually litigated;
 
 
 21
 (3) the issue was determined by a valid and final judgment; and
 
 
 22
 (4) the determination was essential to the judgment.
 
 
 23
 East Texas Motor Freight Lines v. Freeman, 289 Ark. 539, 713 S.W.2d 456, 459 (1986), cited in Lane, 900 F.2d at 1250. Arkansas appears to have followed the general trend away from the requirement of mutuality in collateral estoppel: where the party sought to be estopped had an incentive and a full and fair opportunity to litigate the issue in the prior case, strict identity of parties is not required. Lane, 900 F.2d at 1251.
 
 
 24
 In denying the motion for summary judgment, the district court below did not detail its rationale or cast it explicitly in terms of the elements of collateral estoppel, but merely stated its conclusion "that the Greer decision did not directly or even necessarily adjudicate the issue of whether Separate Defendant Stultz reasonably believed he had his grandfather's permission to drive his truck." The district court's use of the words "directly" and "necessarily" implicates at least two of the four elements, and suggests that it concluded that the issue was not actually ("directly") litigated and was not essential ("necessary") to the judgment.
 
 
 25
 In assessing the issue de novo, we take the four-pronged analysis one step at a time. As to element (1), appellees argue that the difference in the legal contexts--reliance on a representation versus interpretation of a policy's coverage provisions--defeats collateral estoppel. In our view, this contextual difference does not render the factual issue different for collateral estoppel purposes. Judge Eisele's finding that Danny knew that he acted without Clarence's permission is logically distinct from a finding that Danny did not reasonably believe he had permission to drive Clarence's truck on the day of the accident. Insofar as collateral estoppel is concerned, however, the former finding precludes, as a matter of logic, the truth of the latter. The two states of mind are incompatible: if Danny had no permission and knew it, he could not have reasonably believed he had permission. The issue in the instant case is subsumed in the findings made in Greer, so as to satisfy the first requirement for collateral estoppel.
 
 
 26
 Counsel for appellees confused the collateral estoppel issue at oral argument by raising for the first time a third and distinct set of claims arising out of the accident: a declaratory judgment action brought by Audubon Insurance Company against Sharvania Chemical Co.--a chemical company owned by Walker--and other defendants. Counsel spent some time addressing why no collateral estoppel would operate between that claim and the instant case because of the different coverage terms in the different types of policies at issue--there a commercial policy of the chemical company and here a household policy of Walker's.
 
 
 27
 We note, however, as did counsel for appellant in rebuttal, that appellant's collateral estoppel argument is based not on the commercial policy claim but on Greer, which consisted of the claims brought by Danny and Clarence as third-party plaintiffs against Curtis Greer and Greer and White as third-party defendants, within the Audubon Insurance action. Judge Eisele tried the third-party portion of the action separately after disposing of the claims involving the Sharvania Chemical commercial policy, and so captioned his judgment as though rendered in a separate action, omitting any reference to the third-party origin of the claims. Nonetheless, in Greer, no particular policy language was at issue; the claims were tort claims in negligence and fraud, not contractual claims for insurance coverage. Judge Eisele noted in the written judgment that, as a general rule, "both [sides'] expert witnesses agreed that insurance coverage was not available for a person driving a vehicle without the permission of the owner of that vehicle." The findings now found to have preclusive effect do not concern, and are not differentiated by, particular policy language or coverage, but simply concern whether Danny had permission to use Clarence's truck on the day of the accident.
 
 
 28
 As to element two, the portion of the trial transcript submitted on appeal contains trial testimony by both Clarence and Danny concerning the permission issue. We have already stated that although Judge Eisele did not formally set out findings of fact in his ruling, his judgment explained that the directed verdict on the fraud claims was based on his conclusion that, on the evidence there presented, reasonable minds could not disagree that Danny knew he took the truck without permission. The trial transcript and written judgment clearly indicate that the permission question was actually litigated in Greer.
 
 
 29
 The finality and validity of Judge Eisele's judgment is not a point of contention on appeal. Moving on to the fourth element, the permission determination was essential to Judge Eisele's judgment: the court relied solely on that determination in concluding that Clarence and Danny had failed to establish their reliance on the allegedly false representations of the insurance agents. To conclude that Judge Eisele did not necessarily decide the permission issue is to emasculate his judgment's rationale. Finally, because establishing Danny's permissive use of the truck was crucial to prevailing on their fraud claims in Greer, Clarence and Danny had the necessary incentive and opportunity to litigate the issue there.
 
 
 30
 Based on the foregoing de novo analysis, we conclude that the district court wrongly denied summary judgment. Judge Eisele's determinations that (1) Danny had no permission and (2) knew that he had no permission precluded relitigation of the issue in the instant action. That determination also defeats coverage under the policy at issue here, and therefore warrants summary judgment in NFU's favor. Our conclusion moots NFU's appeals concerning the appellees/cross-appellants' motion to amend judgment and NFU's motions for judgment notwithstanding the verdict and for new trial. The cross-appeal concerning attorney's fees is also mooted as, under this Court's ruling, the cross-appellants are no longer the prevailing parties.
 
 
 31
 We reverse and remand with instructions that summary judgment be entered in favor of NFU and against appellees, in accordance with this opinion.
 
 
 32
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 33
 I respectfully dissent. I conclude that the district court did not err in denying summary judgment on the issue of collateral estoppel, and I see nothing in the record to indicate that this issue was raised at trial or in post-trial motions. The court today recognizes the limited nature of Judge Eisele's decision in Greer, specifically, that Judge Eisele did not formally set out findings of fact or decide whether Stultz had actual or implied consent to use the truck.
 
 
 34
 The policy at issue specifically states: "no person is considered an insured person without a reasonable belief of having permission to use [the vehicle]." In a specific interrogatory, the jury concluded that Stultz reasonably believed he had permission to use the vehicle. Stultz testified that he thought he had his grandfather's permission to operate the pickup on the day of the accident, and was permitted to operate it alone on two other separate occasions on the day of the accident. This testimony was sufficient to support the submission of this issue to the jury. It is a different issue than that decided in Greer.
 
 
 35
 I would affirm the judgment of the district court.
 
 
 
 *
 The HONORABLE WILLIAM L. HUNGATE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 Danny Stultz, Jr., a minor, is represented in this action by his mother Brenda Morgan
 
 
 [2]
 The remaining appellees were named as defendants in this declaratory judgment action presumably because they were plaintiffs in the underlying state court action