**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 96-2763

Metropolitan Life Insurance         *
Company, a New York corporation,   *

           *
        Plaintiff/ Appellant,    *
           *
        v.              *       Appeal from the United States
           *       District Court for the District

Golden Triangle, a general      *       of Minnesota.
partnership; Golden Triangle       *
Partners II, a general partnership;    *
Hamilton Associates, a general     *
partnership; Bluffs West         *
Partnership, a general partnership;    *
Bradley A. Hoyt; Steven B. Hoyt;      *
Bruce K. Hoyt; and Michelle L.    *
Hoyt,                  *
           *
        Defendants/ Appellees.    *

Submitted:    March 14, 1997
Filed:    July 29, 1997

Before MAGILL,[1] MURPHY, Circuit Judges, and GOLDBERG,[2] Judge.

GOLDBERG, Judge.

---

[1]The Honorable Frank J. Magill was an active judge at the time that this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

[2]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Following a nearly two-week trial, a jury found that although the defendants-appellees ("Hoyt") breached a contract with plaintiff-appellant Metropolitan Life Insurance Company ("Met Life"), Met Life had not suffered any damages. Met Life now appeals, but challenges neither the jury's verdict nor the sufficiency of the evidence supporting it. Met Life instead disputes the district court's order denying its pretrial motion for summary judgement.[3] Met Life argues that if the district court had properly confined its analysis to the plain language of the contracts at issue, it would have granted summary judgment in favor of Met Life and awarded damages accordingly. Because we conclude that Met Life cannot challenge the denial of summary judgment after a full trial on the merits of its claim, we affirm the judgment below.

I. Background

In 1990 and 1991, Hoyt borrowed funds from Met Life to develop commercial real estate. The loans were secured, in part, by a mortgage on certain developed commercial properties ("Group III Properties"). In 1993, Hoyt defaulted on these loans. Met Life then initiated foreclosure proceedings, and Hoyt responded by filing for bankruptcy.

In late 1993 and early 1994, Hoyt began to negotiate the sale of some of its properties, including the Group III Properties, with a Real Estate Investment Trust ("REIT"). Yet the REIT was unwilling to purchase them unless Hoyt and Met Life entered into a settlement agreement because the Group III Properties were the subject of an ongoing insolvency proceeding. These negotiations resulted in two agreements, the first between Hoyt and the REIT for the sale of the Group III Properties, and the second between Hoyt and Met Life. Only the second is relevant here.

---

[3]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

Under the agreement between Hoyt and Met Life, Met Life was to deliver to Hoyt certain documents that would allow Hoyt to convey the Group III Properties to the REIT unencumbered, in exchange for the "purchase price" of the Group III Properties. The contract defined purchase price as $15.5 million "(or such greater sum as is paid by the Purchaser for the Property) . . . ." Appellant's Br. App. at A-28 (Hoyt/Met Life Group III Properties' Agreement). The contract also prohibited Hoyt from entering into an agreement to sell other property with terms that made that sale either directly or indirectly contingent on the closing of the agreement between Hoyt and Met Life.

At the same time, Hoyt entered into a second agreement with the REIT involving the sale of other property owned by Hoyt, unrelated to the Group III Properties ("Group II Properties"). This agreement provided, inter alia, that if the sale of the Group III Properties to the REIT failed to close, then the purchase price for the Group II Properties was to be reduced by $2.5 million in order to compensate the REIT for diminished "value, utility and competitive presence." Appellant's Br. App. at A-166 (Hoyt/REIT Group II Properties' Agreement of Purchase and Sale).

Met Life later discovered the contract for the sale of the Group II Properties and demanded that Hoyt pay it the $2.5 million, arguing that the amount represented additional compensation paid by the REIT to Hoyt for the Group III Properties. When Hoyt refused to pay it the money, Met Life filed this suit, alleging both breach of contract and misrepresentation.

Positing that the language of the Group II Properties' sales and purchase agreement "plainly and expressly" provided that the $2.5 million was to compensate Hoyt for the sale of the Group III Properties, Met Life then moved for summary judgment on its breach of contract claims. Pl.'s Reply Mem. Supp. Mot. Summ. J. at 2. Hoyt opposed the motion, arguing that the $2.5 million was not intended to be consideration for the Group III Properties, but was intended instead to provide

assurance to the REIT that Hoyt would diligently pursue a settlement agreement with Met Life.[4]  On November 2, 1995, the district court issued an order denying the motion for summary judgment because it found that key contract terms were susceptible to more than one interpretation, and thus were ambiguous. Accordingly, it set the case for trial, and the jury ultimately found that, although Hoyt had breached its contract with Met Life, Met Life had not suffered any damages as a result of the breach.

Significantly, Met Life never renewed the argument it set forth in its summary judgment motion by moving for judgment as a matter of law either at the close of evidence or after the jury's verdict.  Indeed, when Hoyt moved for judgement as a matter of law after Met Life had presented its evidence, Met Life opposed the motion, arguing that "[there was] a jury question on the meaning of the relevant clauses in the Met/Hoyt agreement, and on the objective intentions of the parties as to the meaning of those clauses.  If the jury thinks they are ambiguous, then we have a jury question as well as to what the purpose was of [the $2.5 million provision] in the Group II agreement." Partial Tr. Civil Jury Trial Proceedings at 5 (May 17, 1996) (Jon Hopeman appearing for Met Life).  Met Life now asks us to review de novo the district court's decision to deny its motion for summary judgement.[5]  For the following reasons,

---

[4]According to Hoyt, if the agreement with Met Life failed to close then the REIT, which was planning to make an initial public offering, would have been unable to include the Group III Properties in its list of assets.  As a result, the REIT would have been forced to refile the necessary forms with the Securities Exchange Commission, and to prepare new financial schedules, proforma projections of income, and underwriting agreements, thus incurring considerable costs and delaying the offering.  Appellees' Br. at 6.

[5]In its Notice of Appeal, Metropolitan also appeals from the final judgement entered in this action on May 29, 1996.  However, we limit our discussion to the trial court's denial of Metropolitan's motion for summary judgment because Metropolitan failed to file a motion for judgment as a matter of law at the close of evidence, and it failed either to renew its motion for judgment as a matter of law, or to file a motion for a new trial within ten days after the trial court entered judgment.  See Fed. R. Civ. P. 50(a), 50(b), 59(b).  As a result, Metropolitan waived its right to appeal from the final judgment.  See generally BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of America, AFL-CIO, 90 F.3d 1318, 1325 (8th Cir. 1996); Pulla v. Amoco Oil Co., 72 F.3d 648, 655-56 (8th Cir. 1996); Hubbard v. White, 755 F.2d 692, 695-96 (8th Cir. 1985); Krueger v. State Farm Mut. Auto. Ins. Co., 707 F.2d 312, 314-15 (8th Cir. 1983); Myers v. Norfolk Livestock Mkt., Inc., 699 F.2d 555, 558-59 (8th Cir. 1982).

we must decline its request.

## II. Discussion

In <u>Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.</u>, 19 F.3d 431 (8th Cir. 1994), this Circuit directly addressed whether a denial of summary judgment may be reviewed after a full trial on the merits. The <u>Johnson Int'l Co.</u> court held that a "[a] ruling by a district court denying summary judgment is interlocutory in nature and not appealable after a full trial on the merits." <u>Id.</u> at 434 (citations omitted). It explained that:

> The final judgement from which an appeal lies is the judgment on the verdict. The judgment on the verdict, in turn, is based not on the pretrial filings [to support summary judgment] under Federal Rule of Civil Procedure 56(c), but on the evidence adduced at trial.
>
> . . . The primary question on summary judgment is whether there exists a genuine issue of material fact as to the elements of the party's claim. Once the summary judgment motion is denied and the case proceeds to trial, however, the question of whether a party has met its burden must be answered with reference to the evidence and the record as a whole rather than by looking to the pretrial submissions alone. The district court's judgment on the verdict after a full trial on the merits thus supersedes the earlier summary judgment proceedings.

<u>Id.</u> (internal quotations omitted) (citations omitted) (footnote omitted); <u>accord</u> <u>Reich v. ConAgra, Inc.</u>, 987 F.2d 1357, 1362 n.6 (8th Cir.1993) (citation omitted) ("A denial of summary judgment is not a final order and is not appealable."); <u>Bottineau Farmers Elevator v. Woodward-Cylde Consultants</u>, 963 F.2d 1064, 1069 n.5 (8th Cir. 1992) ("Denial of summary judgment is not properly reviewable on appeal from a final judgment entered after a full trial on the merits.") (citing <u>Jarrett v. Epperly</u>,

896 F.2d 1013, 1016 & n.1 (6th Cir. 1990); Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1359 (9th Cir. 1987); Glaros v. H.H. Robertson Co., 797 F.2d 1564 (Fed. Cir. 1986)).

Hence, under Johnson Int'l Co., its antecedents, and the facts of this case, we are unable to review the denied summary judgment motion because Met Life had a full and fair opportunity to litigate its position before a jury. Met Life attempts to distance itself from Johnson Int'l Co. by constructing a dichotomy between a decision to deny a motion for summary judgment based on the sufficiency of the evidence, and a decision based on an interpretation of substantive law. Appellant's Reply Br. at 1. According to Met Life, in this Circuit, we may review the former, but not the later. Id. at 3 (citing Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1059-60 (8th Cir. 1995); Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1248 (8th Cir. 1994); National Farmers Union Standard Ins. Co. v. Morgan, 966 F.2d 1250 (8th Cir. 1992) ("NFU"); and Foster v. Nat'l Union Fire Ins. Co., 902 F.2d 1316, 1318 (8th Cir. 1990)). However, Met Life's argument misses its mark.

While in the cases that Met Life cites, the panel reviewed a denied motion for summary judgment, none of the panels articulated the analysis that Met Life advances here. Rather, in each of these cases, the panel reviewed the denied motion without reaching the question of whether its review was proper. In so doing, they merely stated the correct standard of review for appellate review of granted motions for summary judgment. See Aerotronics, 62 F.3d at 1059 (citing Commercial Union Ins. Co. v. McKinnon, 10 F.3d 1352, 1354 (8th Cir. 1993)) ("[The appellant] argues that the district court erred in denying its motion for summary judgment . . . . We review the district court's grant of summary judgment de novo."); Gamma-10 Plastics, 32 F.3d at 1249 (citing Cox v. Mid-American Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993)) ("In its cross-appeal APL seeks reversal of the district court's denial of its motion for summary judgment . . . . [W]e consider that question first,

reviewing the district court's decision de novo."); <u>NFU</u>, 966 F.2d at 1252 (citing <u>Holloway v. Conger</u>, 896 F.2d 1131, 1134 (8th Cir. 1990)) ("The Court of Appeals makes a de novo review of the denial of summary judgment."); <u>Foster</u>, 902 F.2d at 1317-18.  Thus, we conclude that none of these cases demand that we review the merits of Met Life's denied summary judgment motion.[6]

We further conclude that Met Life's proposed dichotomy, between a summary judgment denied on factual grounds and one denied on legal grounds, is both problematic and without merit.  Since we do not require a district court to delineate why it denied summary judgment, were we to accept Met Life's proposed distinction, we would be required "to engage in the dubious undertaking of determining the bases on which summary judgment is denied and whether those bases are 'legal' or 'factual.'"[7] <u>Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.</u>, 51 F.3d 1229, 1235 (4th Cir. 1995) (citing <u>Wells v. Hico Indep. Sch. Dist.</u>, 736 F.2d 243, 251 n.9 (5th Cir. 1984)); <u>accord</u> <u>Black</u>, 22 F.3d at 571 n.5 ("[O]ur ability to distinguish such 'factual' and 'legal' issues will be hampered in instances (which are by no means rare) where the district court gives no, or only very generalized, reasons for denying the motion.").  Thus, Met Life asks us to adopt an "approach [that] would require us to craft a new jurisprudence based on a series of dubious distinctions between law and fact,"  <u>Black</u>, 22 F.3d at 571 n.5,

---

[6]This case does not require us to determine whether a denial of a summary judgment motion on an issue preliminary to the merits can be reviewed after trial where no motion for judgment as a matter of law has been made.  <u>Compare</u> <u>Johnson Int'l Co.</u>, 19 F.3d at 434 (involving the merits of a claim) <u>with</u> <u>Gamma-10 Plastics</u>, 32 F.3d at 1249 (involving statute of limitations), <u>NFU</u>, 966 F.2d at 1252 (involving collateral estoppel), <u>and</u> <u>Foster</u>, 902 F.2d at 1318 (involving standing).

[7]It could also be argued that "[a]ll summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts.  We recognize this by our de novo standard of reviewing [granted] summary judgments." <u>Black v. J.I. Case Co.</u>, 22 F.3d 568, 571 n.5 (5th Cir. 1994) (citations omitted).  <u>See generally</u> <u>Cox</u>, 13 F.3d at 274 (citation omitted) (stating that this Circuit reviews a district order granting a motion for summary judgment); <u>Holloway</u>, 896 F.2d at 1134 (citation omitted) (same).

inviting potentially confusing and inconsistent case law to benefit only those summary judgment movants who have failed to abide by the Federal Rules of Civil Procedure.  We find such an approach to be unjustified and decline to adopt it.

Finally, we note that our decision here is in harmony with the majority of the other circuits that have considered whether an appellate court may review a  pretrial denial of a motion for summary judgment after a full trial and judgment on the merits.  See, e.g., Lama v. Borras, 16 F.3d 473, 476 n.5 (1st Cir. 1994) (citations omitted) ("The [appellant's] attack on the denial of summary judgment has been overtaken by subsequent events, namely a full-dress trial and an adverse jury verdict.  In these circumstances, we will not address the propriety of the denial of summary judgment."); Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995) (footnote omitted) ("[W]e follow the other Circuits and conclude that this Court will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits."); Black v. J.I. Case Co., 22 F.3d 568, 569-70 (5th Cir. 1994) (footnote omitted) ("We now conclude that this Court will not review the pretrial denial of a motion for summary judgment where on the basis of a subsequent full trial on the merits final judgment is entered adverse to the movant."); Jarrett v. Epperly, 896 F.2d 1013, 1016 (6th Cir. 1990) (footnote omitted)  ("We agree with the Ninth and Federal Circuits and here hold that where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed."); Watson v. Amedco Steel, Inc., 29 F.3d 274, 278 (7th Cir. 1994) ("Absent an extraordinary circumstance . . . , we will not review the denial of a motion for summary judgment once the district court has conducted a full trial on the merits of a claim."); Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1359 (9th Cir. 1987) ("[W]e believe it would be . . . unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial."); Whalen v. Unit

Rig, Inc., 974 F.2d 1248, 1250-51 (10th Cir. 1992) (footnote omitted) ("[E]ven if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law [] and appellate review of those motions if they were denied."); Glaros v. H. H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986) (footnote omitted) ("[A] denial of summary judgment is not properly reviewable on an appeal from the final judgment entered after trial.").

Met Life has failed to convince us that we should ignore the persuasive policy and prudential considerations advanced by the aforementioned courts. In particular, we are concerned that our review of an order denying a motion for summary judgment condones a litigation strategy that disregards the Federal Rules of Civil Procedure 50(a) and 50(b), and 28 U.S.C. § 1292(b) (1994).[8] See Black, 22 F.3d at 571. It also unduly circumscribes the discretion of the district court to "deny summary judgment in a case where there is a reason to believe that the better course would be to proceed to a full trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted); accord Black, 22 F.3d at 572. "Because the denial [of the summary judgment motion] decided nothing but a need for trial and trial has occurred," we now adopt "the general and better view [] against review of summary judgment denials on appeal from a final judgment entered after trial." Glaros, 797 F.2d at 1573 n.14. Thus, we decline to review the district court's denial of Met Life's motion for summary judgment, and accordingly, affirm the judgment below.

---

[8]Pursuant to 28 U.S.C. § 1292(b), when a party believes that a district court erred when it denied the party's motion for summary judgment, the party may move a court to certify the denial for interlocutory appeal. See Ricke v. Armco Inc., 92 F.3d 720 (8th Cir. 1996) (reviewing a denial of summary judgment on interlocutory appeal).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.