# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2313

_____

New York Marine and General Insurance Company; Starr Indemnity & Liability Company

*Plaintiffs - Appellees*

v.

Continental Cement Company, LLC; Summit Materials, LLC

*Defendants - Appellants*

------------------------------

Summit Materials, LLC; Continental Cement Company, LLC

*Counter Claimants - Appellants*

vs.

New York Marine and General Insurance Company; Starr Indemnity & Liability Company

*Counter Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 12, 2014
Filed: July 17, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Mark Twain, a cement barge owned by Continental Cement Company, LLC and Summit Materials, LLC (Continental Cement), sank in the Mississippi River at St. Louis on the morning of February 7, 2011. Insurers for the barge, Starr Indemnity & Liability Company and New York Marine & General Insurance Company (Starr Indemnity), investigated the sinking and declined coverage for both the loss of the hull and the expense of removing the barge from the river. The insurers then brought this action in the district court seeking a determination of their rights and obligations under Continental Cement's insurance policies. Continental Cement counterclaimed for breach of contract and vexatious refusal to pay under Missouri law.

The insurers later located a survey of the Mark Twain from 2008 which indicated that the barge had not been watertight at the time Continental Cement obtained its policies. On the grounds that Continental Cement had breached its duty of utmost good faith by withholding this survey from its insurance application, Starr Indemnity amended its complaint to assert that the insurance policies were void. Continental Cement responded with a motion for partial summary judgment, asserting in part that this circuit had not recognized the defense of utmost good faith in maritime insurance cases. The district court[1] disagreed, concluded that the defense was "entrenched" federal law, and denied the summary judgment motion. The case proceeded to trial, and the jury returned a general verdict in favor of the insurers. The district court entered a corresponding final judgment, and Continental Cement appeals. We affirm.

_____

[1] The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

-2-

I.

On this appeal we view the facts in the light most favorable to the insurers because the jury ruled in their favor. Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 496 (8th Cir. 2010). Summit Materials is the majority owner of Continental Cement Co., a cement manufacturing company. Continental Cement had been using five barges to transport cement from its manufacturing facility in Hannibal, Missouri down the Mississippi River to its distribution facility in St. Louis. The Mark Twain was among these barges. Built in the 1920s, the Mark Twain was a steel hulled barge with riveted construction. It had ten compartments along the perimeter, each separated by a bulkhead. These bulkheads were intended to be watertight to protect the vessel from sinking should a leak develop in any one compartment.

In 2008 Continental Cement considered retiring the Mark Twain as a transport barge to use as a stationary dock barge. It hired marine engineer Wade McGrady to survey the barge for its fitness for this purpose. McGrady inspected the barge and prepared a "General Condition Survey" summarizing his findings. In his survey McGrady noted that while there were no active hull leaks, "numerous rivets appeared to have been leaking in the past." He also observed that some of the bulkheads were no longer watertight because they were missing rivets. He also inspected the bilge system, which is designed to pump water out of the ship, and testified at trial that it was "not even close" to functioning. The system was in such a "deteriorated state" that water could flow through it and between compartments in the event of a leak. McGrady's survey ended with ten recommendations, including "further subdivision" of the perimeter compartments to isolate water from a leak, and repairs to the bilge system "to prevent progressive flooding." After reviewing this survey, Continental Cement decided not to convert the Mark Twain into a dock barge, and instead put it back into transport service without making any repairs.

On November 4, 2010 Continental Cement applied to Starr Indemnity for a marine insurance policy for all five of the company's barges, including the Mark Twain. Starr Indemnity's form application stated that "QUOTES ARE SUBJECT TO SATISFACTORY CONDITION & VALUATION SURVEYS; USUALLY AT THE EXPENSE OF THE APPLICANT / ASSURED" and requested that the applicant "PLEASE INCLUDE RECENT SURVEYS, IF AVAILABLE." Continental Cement attached to its application an "Appraisal Report" from 2006 that listed the value of each barge but did not list any problems with the Mark Twain. Continental Cement did not attach McGrady's 2008 "General Condition Survey" of the Mark Twain. Starr Indemnity issued the company a primary marine insurance contract and an excess policy that went into effect on December 31, 2010. The underwriter later testified in the district court that he was not aware of the 2008 survey when he reviewed the company's application. If the survey had been provided, he indicated it would have raised in his mind "a serious issue of seaworthiness."

The Mark Twain was at Continental Cement's dock in St. Louis when it sank on the morning of Monday, February 7, 2011. Evidence presented at trial indicates that Continental Cement employees noticed the barge was sitting low in the water three days before it sank, but they conducted only a cursory inspection, performed limited pumping, and left the barge unattended from Saturday afternoon until the barge went under at 6 a.m. on Monday. Shortly after the barge sank, Continental Cement reprimanded its terminal manager for his "lack of proper judgment and supervision (not notifying any of your superiors, nor staffing and pumping the Mark Twain with Continental [Cement] personnel until the known leak was repaired)." Continental Cement did not share either this communication or the 2008 survey with Starr Indemnity.

After Starr Indemnity conducted an independent investigation into why the barge sank, it sent a letter on May 9, 2011 declining insurance coverage for the loss of the Mark Twain's hull, as well as for wreck removal expenses. With respect to hull

coverage, Starr Indemnity's claims agent stated that Continental Cement had not identified a peril covered by the policy that caused the barge to sink, and asserted that "the loss appears to have been due to a lack of due diligence" by Continental Cement. As to wreck removal, the claims agent stated that in the absence of a governmental order requiring Continental Cement to remove the sunken barge, removal was unnecessary and unwarranted under the policy. That same day Starr Indemnity filed an action in federal court seeking a declaration of its rights and obligations under the insurance policies.

During the discovery process Starr Indemnity learned about the 2008 survey, and on August 14, 2012 it filed a fourth amended complaint that added two affirmative defenses. Starr Indemnity argued (1) that by withholding the 2008 survey from its insurance application, Continental Cement had breached its duty of utmost good faith, and (2) that the Mark Twain was unseaworthy at the time Continental Cement applied for insurance and the company thus breached its absolute warranty of seaworthiness. If these arguments were proven, either or both of the affirmative defenses could void the insurance policies.

Continental Cement filed its answer and counterclaim on August 30, 2012, alleging breach of the insurance contract and vexatious refusal to pay. Continental Cement then brought several motions for partial summary judgment. In one of its motions Continental Cement argued that the Eighth Circuit does not recognize the defense of utmost good faith in maritime insurance cases. In denying the motion, the district court concluded that the doctrine of utmost good faith is "entrenched" federal law and that it was a question for the jury whether Continental Cement had violated its duty by withholding the 2008 survey.

The case went to trial. At the close of evidence Continental Cement moved for judgment as a matter of law, partially based on Starr Indemnity's utmost good faith defense. Continental Cement argued (1) that withholding the 2008 survey was at most

an innocent omission and thus there was insufficient evidence to submit the defense to the jury, and (2) that Starr Indemnity had waived this defense by not including it in its initial letter declining coverage. After this motion was denied, Continental Cement challenged the jury instruction on utmost good faith "for the same reasons stated in Continental [Cement]'s motion for judgment as a matter of law." The court rejected this challenge.

The parties disputed whether special interrogatories or a general verdict should be submitted to the jury. The insurers proposed a series of special interrogatories, but the district court decided these would be "more confusing than beneficial to the jury." The district court instead offered to edit a general verdict form so the jury could "identify which affirmative defense they had found," but Starr Indemnity declined this option. Among the district court's instructions to the jury was one instructing it to find insurance coverage for the removal expenses of the wrecked barge unless it found the policies void from their inception on either of Starr Indemnity's affirmative defenses. On May 1, 2013 the jury returned a general verdict in favor of the insurers. The district court accordingly entered judgment in favor of Starr Indemnity, stating that "based upon the verdicts of the jury, the insurance policies for the barge the MARK TWAIN have been voided at their inception."

Continental Cement appeals, arguing that the district court erred by applying the federal doctrine of utmost good faith instead of Missouri state law. In the alternative the company asserts that the district court erred by denying both its motion for judgment as a matter of law and its challenge to the jury instruction on the duty of utmost good faith.

## II.

We first address Starr Indemnity's contention that Continental Cement waived its appeal. The insurers argue that Continental Cement cannot challenge the validity of only one of its two independent affirmative defenses—breach of the duty of utmost good faith and breach of the absolute warranty of seaworthiness—when these two alternative bases for the jury's general verdict resulted in identical damages and when the company failed to object to the use of the general verdict form. We disagree.

A federal trial court has discretion to submit a case to the jury with either a general or special form of verdict. Davis v. Ford Motor Co., 128 F.3d 631, 633 (8th Cir. 1997) (citing Fed. R. Civ. P. 49). A general verdict cannot be upheld if the jury might have based that verdict "in whole or in part on an invalidly submitted theory of liability." Friedman, 606 F.3d at 502 (citing Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co., 370 U.S. 19, 29–30 (1962)). We have recognized that any such error would be harmless if a valid alternative theory would result in the same damages as any invalidated theory. See, e.g., Tioga Pub. Sch. Dist. v. U.S. Gypsum Co., 984 F.2d 915, 921 (8th Cir. 1993); Robertson Oil Co., Inc. v. Phillips Petroleum Co., 871 F.2d 1368, 1376 (8th Cir. 1989). We have applied this harmless error rule only when the jury's verdict clearly showed that it had found for the plaintiff on both theories. See id. That rule would not apply here. If Continental Cement were to succeed on its claim that the doctrine of utmost good faith was unavailable, the final judgment would have to be reversed because "there is no way to know that the invalid claim . . . was not the sole basis for the verdict." United N.Y. & N.J. Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 619 (1959).

Finally, Continental Cement's failure to object to the general verdict form also does not waive this appeal, as we "have not necessarily required an objection at trial in order to address problems arising from the way in which [a] case was submitted." Friedman, 606 F.3d at 501 n.4.

III.

We next address the merits of the appeal. Continental Cement's claim is that the district court erred by applying the federal doctrine of utmost good faith. A dispute arising under a marine insurance contract is "governed by state law, unless an established federal admiralty rule addresses the issue raised." Assicurazioni Generali S.P.A. v. Black & Veatch Corp., 362 F.3d 1108, 1111 (8th Cir. 2004) (citing Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 316–21 (1955)). In its fourth amended complaint, Starr Indemnity asserted that a controlling federal admiralty rule governs this case. Under the federal common law doctrine of utmost good faith or *uberrimae fidei*, "a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 316 (1928). Based on this doctrine Starr Indemnity alleged that its insurance policies for Continental Cement were void. Continental Cement did not disclose to the insurers that the 2008 study had revealed flaws in its barge, and Starr Indemnity asserts that it thereby suppressed evidence material to the insurers' decision to underwrite the risk.

In its motion for partial summary judgment, Continental Cement disputed the claim that the federal doctrine of utmost good faith is an established federal admiralty rule. It argued instead that Missouri law applies, thereby requiring Starr Indemnity to show an additional element of fraud. In support of its position Continental Cement cites a Fifth Circuit opinion, Albany Insurance Co. v. Anh Thi Kieu, 927 F.2d 882 (5th Cir. 1991). In Anh Thi Kieu, the Fifth Circuit named three factors to consider in determining whether a federal maritime rule controls an issue: "(1) whether the federal maritime rule constitutes entrenched federal precedent; (2) whether the state has a substantial and legitimate interest in the application of its laws; (3) whether the state's rule is materially different from the federal maritime rule." Id. at 886 (internal citations omitted). That court concluded that in Anh Thi Kieu all three factors favored

the application of state law, noting "with some hesitation," that "the *uberrimae fidei* doctrine is entrenched no more." Id. at 889.

Here, the district court concluded that the doctrine of utmost good faith remains "entrenched federal precedent" and that the case of Anh Thi Kieu was an aberration. The district court pointed out that numerous other circuits have recognized the doctrine of utmost good faith as entrenched and noted that the Eighth Circuit applied the doctrine in 2003 in an ERISA case. See Shipley v. Ark. Blue Cross and Blue Shield, 333 F.3d 898, 903 (8th Cir. 2003). The district court denied summary judgment to Continental Cement after concluding that there remained issues of fact regarding whether it had violated its duty of utmost good faith. Continental Cement now appeals the district court's choice of law determination.

## A.

Before we reach the merits of the choice of law question, we must first consider whether it has been properly preserved. Lopez v. Tyson Foods, Inc., 690 F.3d 869, 875 (8th Cir. 2012) ("This court is unable to address [] arguments . . . not preserve[d] . . . for appeal."). At the close of evidence when Continental Cement moved for entry of judgment as a matter of law on Starr Indemnity's utmost good faith defense, it argued only that (1) the evidence submitted was insufficient to support the defense, and (2) Starr Indemnity had waived the defense of utmost good faith by omitting it from its declination letter. At this point Continental Cement did not renew the argument made in its partial motion for summary judgment that Missouri law, rather than federal common law, should govern this issue. Starr Indemnity now asserts that Continental Cement's failure to renew its choice of law argument in a Rule 50 motion at trial renders this argument unavailable at this point.

It is generally true that a denial of summary judgment is interlocutory in nature and not appealable after trial and judgment. Johnson Int'l Co. v. Jackson Nat'l Life

Ins. Co., 19 F.3d 431, 434 (8th Cir. 1994). Once a case proceeds to trial, "the question of whether a party has met its burden must be answered with reference to the evidence and the record as a whole, rather than by looking to the pretrial submissions alone." Id. Thus, the proper redress for an argument denied at summary judgment is not through appeal of that denial, "but through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied." White Consol. Indus., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1189 (8th Cir. 1999) (internal quotation marks omitted).

At least seven circuits examining this rule have carved out an exception for arguments made at summary judgment that are "purely legal" in nature. See Feld v. Feld, 688 F.3d 779, 781–82 (D.C. Cir. 2012) (citing cases). These circuits have concluded that "[t]he rationale for requiring a Rule 50 motion does not apply to purely legal questions," because "[n]o changed facts or credibility determinations at trial could alter" the court's analysis on a pure question of law. Id. at 782. At least two circuits have disagreed, having concluded that a Rule 50 motion is required to preserve any legal or factual issue for appeal if it was first denied in a summary judgment motion. Id. at 782–83. The circuits in the latter group have emphasized the difficulty of "determining the bases on which summary judgment is denied and whether those bases are legal or factual." Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1235 (4th Cir. 1995) (internal quotation marks omitted); see also Ji v. Bose Corp., 626 F.3d 116, 127–28 (1st Cir. 2010).

Our own case law on this subject is conflicting. See Lopez, 690 F.3d at 875. In Metropolitan Life Insurance Co. v. Golden Triangle, 121 F.3d 351, 355 (8th Cir. 1997), we firmly rejected any "dichotomy[] between a summary judgment denied on factual grounds and one denied on legal grounds [as] both problematic and without merit." Two years later, however, another panel took the opposite approach. In White Consolidated Industries, 165 F.3d at 1189–90, the court determined without discussing Metropolitan Life that "when . . . denial of summary judgment is based on

the interpretation of a purely legal question, such a decision is appealable after final judgment." White Consol. Indus., 165 F.3d at 1190. Faced with this inter panel conflict, we concluded in Lopez that under our circuit rules "Metropolitan Life's earlier holding is the law in this circuit." Lopez, 690 F.3d at 875.

A closer examination of our opinion in Metropolitan Life reveals that we did not indiscriminately foreclose all appeals taken from the denial of an issue raised at summary judgment. In a footnote we recognized a distinction between the denial of a summary judgment motion involving the merits of a claim and one involving preliminary issues, such as a statute of limitations, collateral estoppel, or standing. Metro. Life, 121 F.3d at 355 n.6 (internal citations omitted). Nevertheless, Metropolitan Life "d[id] not require us to determine whether a denial of a summary judgment motion on an issue preliminary to the merits can be reviewed after trial where no motion for judgment as a matter of law has been made." Id. That issue remains open.

A choice of law question is generally preliminary to determination of the merits in a case, and we conclude such a question can be reviewed on appeal if it has been denied in a summary judgment motion. We have even reviewed a choice of law argument decided on a motion for summary judgment after a full trial on the merits. Collins v. State Farm Mut. Auto. Ins. Co., 902 F.2d 1371, 1372–73 (8th Cir. 1990). Collins predated Metropolitan Life, but its examination of the choice of law issue was consistent with the exception later discussed in Metropolitan Life dealing with issues preliminary to the merits. That discussion was based on prior circuit opinions which examined issues such as statutory time bars, collateral estoppel, or standing after a full trial. Metro. Life, 121 F.3d at 355 n.6. We agree with the Seventh Circuit that a "choice of law decision is sufficiently independent of the ultimate summary judgment inquiry . . . to warrant [appellate] review." Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 572 (7th Cir. 1995); see also 15B Wright & Miller, Fed. Pract. & Proc. Juris. § 3914.28 n.26 (2d ed.).

B.

Whether the federal doctrine of utmost good faith or Missouri law applies to this dispute about maritime insurance coverage is a question of law subject to de novo review. Assicurazioni, 362 F.3d at 1111. In Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310 (1955), the Supreme Court acknowledged the conflicting interests in this area of law: maritime disputes are traditionally governed by federal law, but insurance disputes are generally determined by state law. Striking a balance between the two in Wilburn Boat, the Court determined that courts should apply state law to maritime insurance disputes unless there is a judicially established federal admiralty rule governing the issue. 348 U.S. at 314, 316–21; see also Assicurazioni, 362 F.3d at 1111; Cargill, Inc. v. Commercial Union Ins. Co., 889 F.2d 174, 178 (8th Cir. 1989).

We conclude that the doctrine of utmost good faith is such a judicially established federal admiralty rule. The Supreme Court has long recognized the doctrine. See McLanahan v. Universal Ins. Co., 26 U.S. (1 Pet.) 170, 185 (1828) ("The contract of insurance has been said to be a contract *uberrimae fidei*, and the principles which govern it, are those of an enlightened moral policy."); Phoenix Mut. Life Ins. Co. v. Raddin, 120 U.S. 183, 189 (1887); Stipcich, 277 U.S. at 316. In fact, by the time of the Court's Stipcich decision in 1928, the doctrine was referred to as a "traditional" aspect of insurance law. 277 U.S. at 316. Acknowledging this tradition in insurance law, we discussed the doctrine in the context of a fire insurance case in 1931. Springfield Fire & Marine Ins. Co. v. Nat'l Fire Ins. Co., 51 F.2d 714, 719 (8th Cir. 1931). In Springfield, we explained that the doctrine of *uberrimae fidei* was a "cardinal rule of insurance contracts . . . early adopted as to marine insurance contracts." Id. Other circuits have long acknowledged this doctrine in the maritime insurance context as well. See, e.g., Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 308 (2d Cir. 1987); E. Coast Tender Serv., Inc. v. Robert T. Winzinger, Inc.,

-12-

759 F.2d 280, 284 n.3 (3d Cir. 1985); <u>Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.</u>, 795 F.2d 940, 942 (11th Cir. 1986).

Although the Fifth Circuit rejected the doctrine of utmost good faith in favor of state law in <u>Albany Insurance Co. v. Anh Thi Kieu</u>, 927 F.2d 882 (1991), a number of circuits which have addressed the question since then, including our own, have concluded that the doctrine remains established federal precedent. In <u>Shipley v. Ark. Blue Cross and Blue Shield</u>, we recognized in 2003 that "insurance policies are traditionally contracts *uberrimae fidei*," in upholding a right of rescission where material information had been withheld on a health insurance application governed by ERISA. 333 F.3d at 903 (quoting <u>Stipcich</u>, 277 U.S. at 316). The Ninth Circuit pointedly rejected the approach of the Fifth Circuit while deciding a maritime insurance case, explaining that "in the face of 200 years of precedent, it takes more than a single circuit case and spotty citation in recent years to uproot an entrenched doctrine." <u>Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.</u>, 518 F.3d 645, 653 (9th Cir. 2008). Appellate courts in the Second Circuit, Third Circuit, and Eleventh Circuit have reached a similar conclusion in the maritime context. See <u>AGF Marine Aviation & Transp. v. Cassin</u>, 544 F.3d 255, 262–63 (3d Cir. 2008); <u>N.Y. Marine & Gen. Ins. Co. v. Tradeline</u>, 266 F.3d 112, 123 (2d Cir. 2001); <u>HIH Marine Serv., Inc. v. Fraser</u>, 211 F.3d 1359, 1362–63 (11th Cir. 2000).

Based on its lengthy history, we conclude that "no rule of marine insurance is better established tha[n] the utmost good faith rule." <u>Inlet Fisheries</u>, 518 F.3d at 653–54 (quoting Thomas J. Schoenbaum, <u>The Duty of Utmost Good Faith in Marine Insurance Law: A Comparative Analysis of American and English Law</u>, 29 J. Mar. L. & Com. 1, 11 (1998)). We thus decline to follow the approach adopted by a single circuit in <u>Anh Thi Kieu</u> or to fashion a new rule based on policy considerations urged by Continental Cement. Under the Supreme Court's longstanding framework in <u>Wilburn Boat</u>, "[o]ur only task is to determine whether *uberrimae fidei* is already an

established rule of federal maritime law," and we conclude that it is. <u>Inlet Fisheries</u>, 518 F.3d at 654.

IV.

Continental Cement argues in the alternative that the district court erred by denying its motion for judgment as a matter of law on Starr Indemnity's utmost good faith defense. We must first consider whether this argument was properly preserved for appeal. Upon examining the record, we conclude that it was not. A party cannot challenge the sufficiency of the evidence if it failed to file a postverdict motion under Rule 50(b) after the district court denied its Rule 50(a) motion. <u>See, e.g.</u>, <u>S.E.C. v. Das</u>, 723 F.3d 943, 948 (8th Cir. 2013). Continental Cement asserts that it is raising legal issues and therefore was not required to renew its motion after trial. <u>See</u> <u>Linden v. CNH Am., LLC</u>, 673 F.3d 829, 832–34 (8th Cir. 2012). The record does not support that argument.

The specific issues raised by Continental Cement in its motion for judgment as a matter of law involved questions of fact: namely, (1) whether the withheld survey was an innocent omission or a material concealment and (2) whether Starr Indemnity had notice of the existence of the survey at the time it sent its declination letter. To the extent Continental Cement is challenging the denial of its motion for judgment as a matter of law on any grounds other than those raised in its motion at trial, such arguments would be similarly unavailable. <u>Browning v. President Riverboat Casino-Missouri, Inc.</u>, 139 F.3d 631, 636 (8th Cir. 1998) ("A party is required to have raised the reason for which it is entitled to judgment as a matter of law in its Rule 50(a) motion before the case is submitted to the jury and reassert that reason in its Rule 50(b) motion after trial."). Based on this record we conclude that Continental Cement waived its appeal of the denial of its motion for judgment as a matter of law on Starr Indemnity's utmost good faith defense.

-14-

V.

Finally, Continental Cement argues that the district court erred by failing to instruct the jury that it must determine whether its nondisclosure of the 2008 survey was material to the risk insured by Starr Indemnity. In order "to preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record." Dupre v. Fru-Con Eng'g, Inc., 112 F.3d 329, 334 (8th Cir. 1997). At the jury instruction conference in the district court Continental Cement objected to the utmost good faith defense instruction solely on the grounds that "there is no evidence to support submitting on the doctrine of the duty of utmost good faith." Continental Cement did not object at the trial stage to the wording of the instruction on the basis it raises on appeal, namely the purported failure to instruct on materiality.

Moreover, quite apart from the issue of waiver, the district court did not abuse its discretion in submitting instruction No. 8 on the defense of utmost good faith. Friedman, 606 F.3d at 499. Even when "a portion of a jury instruction is assigned as error," we must "look to the instructions as a whole" to determine whether such error is prejudicial. Villanueva v. Leininger, 707 F.2d 1007, 1009–10 (8th Cir. 1983). The relevant instruction stated that "[t]he doctrine of utmost good faith requires policy holders to disclose facts to an insurer that are material to a calculation of the insurance risk," and defined materiality as "something which would have influenced the judgment of a prudent underwriter in calculating the insurance risk and/or setting terms or conditions of coverage." (Emphasis added). While this language appeared in the introductory part of the instruction given by the district court rather than in the verdict directing paragraph, "[n]o prejudicial error resulted, because the court adequately covered the subject area." Id. at 1010. We conclude that "taken as a whole" this instruction "fairly and adequately presented . . . the applicable law to a jury." Id.

-15-

## VI.

Accordingly, we affirm the judgment of the district court.

_____