IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 18, 2021 Session

## G.T. ISSA CONSTRUCTION, LLC v. BONNIE BLALOCK

**Appeal from the Circuit Court for Hamilton County**
**No. 17C1296       L. Marie Williams, Judge**
_____

### No. E2020-00853-COA-R3-CV
_____

This is a controversy between a homebuyer, the plaintiff, and a residential developer/contractor concerning the construction and sale of a newly constructed custom-built home and lot within a subdivision with restrictive covenants. The parties executed a fill-in-the-blank "Purchase and Sale Agreement" ("the Agreement") pursuant to which the defendant agreed to construct a custom home and sell the home and lot to the plaintiff. The principal matter in dispute is whether the defendant was contractually obligated to provide a brick veneer on the retaining wall installed by the defendant. The Agreement did not expressly include the construction of a retaining wall; however, the parties agree that a retaining wall was to be constructed and included in the sale. Although the brick veneer had not been installed and the hotly disputed issue remained unresolved, the sale closed. Shortly thereafter, the buyer commenced this action in which she asserted, *inter alia*, claims for breach of contract and violation of the Tennessee Consumer Protection Act. The plaintiff alleged that the defendant failed to finish the retaining wall with brick veneer as required by the subdivision's restrictive covenants and implicitly required by the Agreement. In its answer, the defendant denied liability and asserted that it had no obligation to provide a veneer finish on the retaining wall. The case proceeded to a jury trial, after which the jury awarded the plaintiff $6,800 on her breach of contract claim. Thereafter, the trial court awarded the plaintiff $201,255.50 in attorney fees and expenses. This appeal followed. The defendant seeks to set aside the jury verdict, arguing that the Agreement was fully integrated and did not include an obligation to build a retaining wall. The defendant also appeals the amount of the award of attorneys' fees, arguing that the plaintiff was not entitled to an award for time spent on her unsuccessful claims. We affirm the trial court's decision in all regards.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Buddy Bryant Presley and Terrance L. Jones, Chattanooga, Tennessee, for the appellant, G.T. Issa Construction, LLC.

Timothy M. Gibbons, Nathan Lee Kinard, and Harold Lebron North, Jr., Chattanooga, Tennessee, for the appellee, Bonnie Blalock.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In July 2015, Bonnie Blalock ("Plaintiff") began a months-long process of discussions, negotiations, and plans review in furtherance of a contract with G.T. Issa Construction, LLC ("Defendant"). Pursuant to the parties' contract, Defendant would construct, and Plaintiff would purchase, a custom home on an empty lot Defendant owned in the Majestic Hills neighborhood of Chattanooga, Tennessee. Because the lot was on a steep hillside, Plaintiff asked what type of house Defendant could build there and whether a retaining wall would be needed. Defendant provided Plaintiff with several house plans to consider, and Defendant's owner/operator, Gus Issa, confirmed that a retaining wall would probably be necessary. Plaintiff eventually settled on a house plan, which Defendant modified to suit her needs.

In December 2015, the parties executed a fill-in-the-blank "Purchase and Sale Agreement"[1] that was completed or "filled in" by a neutral transaction facilitator. Pursuant to the Agreement, Plaintiff agreed to buy, and Defendant agreed to construct and sell, a "GT419-118 plan" custom home, along with the lot known as 1113 Renas Terrace, for $340,000.00.[2] Because the home was being built and finished to Plaintiff's specifications, the Agreement required her to pay a $34,000 non-refundable deposit.

In an addendum, the parties agreed on certain interior and exterior details, including the use of "sod" in the front and side yards and "straw/seed" in the rear. Other details, such as the paint colors, were left to be decided at a later date. Although the parties discussed the need for a retaining wall, a retaining wall was not expressly included in the house plan, the addendum, or the Agreement. Nonetheless, when Mr. Issa began preparing the lot for construction, he decided to construct a concrete retaining wall to level the lot. When complete, the retaining wall ran almost the entire length of the lot and partway around back.

Plaintiff did not complain about the wall being built, but she was concerned about how it looked. Thus, at a material selection meeting in April 2016, Plaintiff asked one of

---

[1] The fill-in-the-blank form agreement was created and provided by the Tennessee Association of Realtors for general use within the industry.

[2] The purchase was subsequently increased, by agreement, to approximately $369,000.00.

Defendant's employees what finish "the wall" would have. After conferring briefly with Mr. Issa, the employee told Plaintiff that "the wall" would be covered in brick.

The parties did not discuss the retaining wall again until the project was nearly complete. In early October 2016, Plaintiff sent Mr. Issa an email asking when the brick would be installed on the wall—to which Mr. Issa replied that there were no plans to install brick. Plaintiff insisted that she had been promised brick at the April 2016 meeting, and she pointed out that the Majestic Hills restrictive covenants required "[a]ll retaining walls [to] be veneered with brick or stone."

Mr. Issa insisted that "the wall" they discussed in April 2016 was a smaller "landscaping wall" that was eventually built along the front side of the house. He also told Plaintiff that the restrictive covenant was no longer required by the homeowners' association because several houses in the neighborhood had bare concrete retaining walls and the restriction had not been enforced.

Plaintiff also asserted that Defendant used the wrong type of sod in the front and side yards. Defendant used Bermuda grass, and Plaintiff claimed that she requested Fescue during construction. After several heated exchanges, Defendant refused to replace the sod and told Plaintiff it would cost another $6,800 to brick the retaining wall. Plaintiff refused to pay the extra money.

Concerned about losing her non-refundable deposit, Plaintiff closed on the purchase of the property in December 2016. She then paid a third-party $12,400 to install a stone veneer on the retaining wall and replace the Bermuda grass.

In January 2017, Plaintiff filed a civil warrant against Defendant in Hamilton County General Sessions Court to recoup the above costs. Before that action was heard in the General Sessions Court, Defendant filed a complaint for declaratory judgment in the Hamilton County Circuit Court. Plaintiff then filed a countercomplaint to reassert her claims in the circuit court action. Defendant later nonsuited the declaratory judgment action, leaving only Plaintiff's claims to be adjudicated.

As later amended, Plaintiff's countercomplaint asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act ("TCPA"), promissory fraud, and breach of the implied warranty of merchantability and the implied duty to build in compliance with the restrictive covenants of the development. Plaintiff alleged, *inter alia*, that Defendant breached its express obligation under paragraph 5 of the Agreement to convey "good and marketable title" to the property "subject . . . to . . . subdivision and/or condominium declarations, covenants, restrictions, and easements of record." Plaintiff also alleged that Defendant breached its implied "duty to construct improvements to real property in compliance with the covenants and restrictions of the development." Defendant filed an answer denying liability under any theory.

- 3 -

In June 2019, Defendant moved for summary judgment on the allegation that it violated paragraph 5 of the Agreement. The trial court denied the motion, finding a dispute of material fact concerning the meaning of the language in paragraph 5.

During the jury trial, each party presented an expert witness to testify on the meaning of paragraph 5. Plaintiff's expert witness, real estate attorney Brian Kopet, testified that Defendant's duty to convey "good and marketable title" to the property "subject . . . to . . . subdivision and/or condominium declarations, covenants, restrictions, and easements of record" meant Defendant had to build all improvements "in compliance with" the subdivision restrictions. He justified his interpretation by explaining that it was an industry standard for builders to comply with subdivision covenants and restrictions.

In contrast, Defendant's expert witness, real estate attorney Darren Kennedy, gave his opinion that the obligation to convey title "subject . . . to" certain exceptions was referring to possible encumbrances on the title—not physical improvements on the property.

Mr. Issa also testified on behalf of Defendant. He acknowledged that, as a new home builder, he is generally required to comply with subdivision restrictive covenants. Yet Mr. Issa maintained that the retaining-wall restriction was void because it had been violated on other properties in the neighborhood and no one was enforcing it.

At the close of the evidence, Plaintiff voluntarily dismissed her claim for breach of the implied warranty of merchantability and the implied duty to build in compliance with the restrictive covenants of the development, and Defendant waived the "selective enforcement" defense to the validity of the restrictive covenant. Both parties also made oral motions for a directed verdict under Tenn. R. Civ. P. 50.01, which the trial court denied.

After closing arguments, the court charged the jury on Plaintiff's remaining claims for breach of contract, breach of the implied duty of good faith and fair dealing, promissory fraud, and violation of the TCPA. In its charge on the breach of contract claim, the court told the jury it had concluded that the Agreement was ambiguous and, therefore, the jury could consider extrinsic evidence to determine what the parties agreed upon. More specifically, the court instructed the jury that it may consider the parties' statements and representations:

> The Court has concluded that the agreement between the parties is ambiguous. [The parties' agreement] may also include statements and represent[ations]. It is for you to determine, what if any, additional terms were proved by a preponderance of the evidence.
>
> As I have concluded that the contract here is ambiguous, you may look beyond the four corners of the written agreement; that is, look to other

evidence besides just the written terms to determine what the parties intended to agree to.

After deliberating, the jury found for Plaintiff on her claims for breach of contract and breach of the covenant of good faith and fair dealing, and it awarded Plaintiff $6,800 in damages. The jury found for Defendant on Plaintiff's claims for promissory fraud and violation of the TCPA. Defendant then filed a renewed motion for directed verdict or a new trial, which the trial court denied.

Both Plaintiff and Defendant moved for an award of attorneys' fees. Plaintiff sought an award as the prevailing party on the breach of contract claim; Defendant sought an award as the prevailing party on the TCPA claim.[3] The court granted Plaintiff's motion, finding that Plaintiff was entitled to an award of all requested attorneys' fees as the prevailing party. The court reasoned, "All of the theories on which the case went to the jury arose out of the contractual relationship between the parties"; thus, "while [Plaintiff] prevailed only on the breach of contract theory, the other causes of action arose out of the same operative facts." The court also found Plaintiff's requested fees were reasonable under the factors in Tenn. Sup. Ct. R. 8, RPC 1.5. The court denied Defendant's motion, reasoning that Plaintiff's action was not "frivolous or wholly without legal or factual merit." The court noted that Plaintiff's "counsel made sufficiently compelling arguments to permit this issue to go to the jury."

This appeal followed.

### ISSUES

Defendant raises five issues on appeal:

(1) Whether the trial court erred in denying Defendant's motion for directed verdict when Plaintiff presented no evidence that the contract obligated Defendant to construct a retaining wall or install a particular species of sod.

(2) Whether the trial court erred when it denied Defendant's motion for summary judgment and refused to interpret paragraph 5(A) of the contract.

---

[3] In Tenn. Code Ann. § 47-18-109(e)(2), the TCPA provides:

> In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs.

(3) Whether the trial court erred when it admitted hearsay and parol evidence on the terms of an unambiguous contract.

(4) Whether the trial court erred when it instructed the jury that paragraph 5(A) of the contract was conclusively ambiguous.

(5) Whether the trial court erred when it awarded Plaintiff attorney's fees expended in support of claims on which she did not prevail.

Plaintiff raises one issue: whether Plaintiff should be awarded her reasonable attorneys' fees on appeal.

## ANALYSIS

### I. MOTION FOR DIRECTED VERDICT OR NEW TRIAL

Defendant contends the trial court should have directed the verdict on Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing because there was no evidence that Defendant breached any obligation under the Agreement. In the alternative, Defendant contends the trial court should have granted a new trial because the jury's award of damages was inadequate. We shall discuss each issue in turn.

### A. Directed Verdict

When reviewing a motion for directed verdict, the court "must take the strongest legitimate view of the evidence in favor of the non-moving party, disregarding all countervailing evidence." *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 67 (Tenn. 2013). The motion should be denied "if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence." *Day v. Beaver Hollow L.P.*, 612 S.W.3d 32, 37 (Tenn. Ct. App. 2020) (quoting *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006)). Conversely, the trial court should grant a motion for a directed verdict if the evidence is "susceptible to only one conclusion." *Lake*, 405 S.W.3d at 67 (quoting *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 281 (Tenn. 2005)).

If the trial court's ruling on a motion for a directed verdict is challenged on appeal, the appellate court is to conduct a de novo review and apply the same standards that governed the trial court's determination. *See id.*

Defendant contends the trial court should have directed the verdict on Plaintiff's contract claims because there was no evidence that Defendant breached any obligation under the Agreement. More specifically, Defendant argues there was no evidence it breached any obligation under the Agreement because "the written contract does not obligate [Defendant] to construct a retaining wall with any particular covering" and, in fact,

"is wholly silent as to the construction of any retaining wall during the construction of [Plaintiff]'s home."[4]

"In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). The central principle in contract interpretation is "to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). The words of the contract are the best evidence of the parties' intent. *Id*. Consistent with this principle, the parol-evidence rule prohibits the use of extrinsic evidence to supplement or contradict the written terms of a fully integrated contract. *Id*. at 697.

As Defendant correctly points out, the retaining wall was not mentioned in the house plan, the addendum, or the Agreement.[5] Moreover, the Agreement included a merger clause, stating that it constituted "the sole and entire agreement between the parties" and that "[n]o representation, promise, or inducement not included . . . [would be] binding upon any party." Thus, a strict reading of the Agreement would support Defendant's contention that "the written contract d[id] not obligate Defendant to construct a retaining wall with any particular covering." Based on these facts, Defendant maintains this should have been dispositive in the trial court. We find Defendant's argument omits relevant facts and, as a consequence, is unpersuasive.

If the issue were whether Defendant was obligated to construct a retaining wall in the first place, the wall's absence from the written documents might be dispositive. The problem is that Defendant built a retaining wall regardless of what was in the written documents. Because Defendant constructed a retaining wall that was beyond the four corners of the Agreement, it is readily apparent that the Agreement was only partially integrated.

When a contract is only partially integrated, it "may be supplemented by consistent, additional terms." *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 696 (quoting Steven W. Feldman, 21 *Tenn. Practice: Contract Law and Practice* § 8:50 (June 2018)). Because the contract documents were silent on the issue of the retaining wall—but Defendant built one anyway—it was appropriate for the trial court to allow supplementary

---

[4] Defendant also argues that the Agreement did not obligate Defendant to "install any particular species of sod." Although the parties dispute whether Defendant installed the correct sod, their arguments on appeal pertain almost entirely to the wall. Thus, we will focus our analysis on evidence about the retaining wall.

[5] Although the house plan was not introduced into evidence, Mr. Issa testified that the retaining wall was not included on the plan, and Plaintiff did not dispute or contradict his testimony.

evidence to prove additional terms. Accordingly, we affirm the trial court's decision to allow such evidence.

The relevant facts that were introduced included Plaintiff's testimony that she was told the wall would be covered in brick at a design meeting in April 2016:

> Q. Did you raise at that meeting on April 27th any concerns about the retaining wall and the house?
>
> A. Yes.
>
> .    .    .
>
> Q. Tell me what your discussion was.
>
> A. That I was very concerned about how close it was to the home, and how it was going to look out of all the windows. I wanted to know what it was going to be covered with and what the potential cost would be. And [Emily Smith] stopped and asked Gus—said, Gus retaining walls in Majestic Hills, they're brick; right? And he said, Yes, brick.

During cross-examination, Plaintiff also testified that she was told there would be no extra cost for the brick:

> A. [Emily] said, "Gus, retaining walls in Majestic Hills are brick; right?" He said, "Yes, brick." And it was understood that that's what they do with walls in Majestic Hills, so there were no additional costs to it. . . .
>
> Q. So at that point in time he didn't say anything about the cost; did he?
>
> A. Of brick, no.
>
> Q. Of anything?
>
> A. No, he did of stone, because then in a separate sentence she asked— because I asked her would it be additional for stone, and she asked him that question and he quoted an additional price for stone.

Mr. Issa and Ms. Smith recalled the conversation differently and testified that they were talking about a smaller "landscaping" wall that was later built on the front side of the house. But Plaintiff rebutted this testimony with emails between her and Mr. Issa showing that the landscaping wall was not part of the plan until May 2016—a full month after the design meeting.

As noted above, when considering a motion for directed verdict, the court is required to take the strongest legitimate view of the evidence in favor of the non-moving party and

disregard all countervailing evidence. *See Lake*, 405 S.W.3d at 67. Viewing the evidence in this light, we have concluded, as the trial court did, that the evidence material to the claims at issue was disputed or, stated another way, doubt exists as to the conclusions to be drawn from the evidence. *See Day*, 612 S.W.3d at 37. Accordingly, we affirm the trial court's determination that a directed verdict was inappropriate.

## B. New Trial

Defendant contends it was entitled to a new trial because the jury's award of damages was not supported by material admissible evidence.

In its principal brief on appeal, Defendant contended that the record contained no evidence to support the jury's determination that Plaintiff should be awarded a monetary judgment of $6,800 for the cost of the brick veneer. However, in its reply brief, Defendant acknowledged that it overlooked Mr. Issa's testimony in which he estimated it would cost $6,800 to install a brick veneer on the retaining wall.[6]

We must give "full faith and credit to all of the evidence that tends to support that amount" found by the jury. *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980). There being direct evidence to support the jury's verdict of $6,800 for the cost of the brick veneer, we affirm the trial court's decision to deny Defendant's motion for a new trial.

## II. MOTION FOR SUMMARY JUDGMENT

Defendant contends that the trial court erred when it denied Defendant's motion for summary judgment. We find it unnecessary to address this issue because the denial of a motion for summary judgment is not appealable after a trial on the merits when the denial was based on a genuine issue of material fact. *Alex Lyon & Son Sales Managers And Auctioneers, Inc. v. Boles*, No. M2010-00388-COA-R3-CV, 2010 WL 3895520, at *1 (Tenn. Ct. App. Oct. 5, 2010) (citations omitted). This is because "[t]he primary question on summary judgment is whether there exists a genuine issue of material fact as to the elements of a party's claim," but once "the case proceeds to trial, . . . the question of whether a party has met its burden must be answered with reference to the evidence and

---

[6] The oversight was brought to Defendant's attention by Plaintiff in her Appellant's brief:

> According to Mr. Issa's trial testimony, $6,800 is what it would cost to install brick veneer on the wall. And there was evidence that stone veneer costs more than a brick veneer, and Ms. Blalock paid $12,400 for a stone veneer. Given that it was Mr. Issa himself who offered the $6,800 amount—which matches the jury's verdict exactly—there is simply no basis to claim a compromise verdict. It is transparent that the jury thought there was a breach related to the failure to install the brick veneer and awarded damages as appropriate.

(citation omitted).

the record as a whole rather than by looking to the pretrial submissions alone." *Id*. at *2 (quoting *Johnson Int'l. Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir. 1994)).

Here, the trial court denied Defendant's motion for summary judgment because there was a genuine issue of material fact. The case then proceeded to a trial on the merits. Thus, the trial court's denial of Defendant's motion for summary judgment is not reviewable. *See id*.

### III. EXPERT TESTIMONY

Defendant argues that the trial court erred by allowing testimony from Plaintiff's expert witness, Mr. Kopet. Defendant asserts that Mr. Kopet's testimony was impermissible extrinsic evidence and included hearsay.

We have already explained that extrinsic evidence was permitted to establish additional consistent terms to the Agreement. As for the hearsay allegation, we find Defendant has waived this issue.

"Objections to the introduction of evidence must be timely and specific." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000) (citation omitted). "Failure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence." *Id*. (citations omitted).

At trial, Defendant objected when Mr. Kopet began to describe a phone call with another attorney on the ground that the testimony was hearsay. Significantly, the court agreed that Mr. Kopet could not describe the conversation. The court then clarified that Mr. Kopet could rely on hearsay as the basis of his opinion. Plaintiff's counsel rephrased the question, and Mr. Kopet stated simply that the other attorney confirmed Mr. Kopet's opinion regarding the industry definition of terms used in the contract. Defendant's counsel did not object to this testimony. Accordingly, this issue was waived.

### IV. JURY INSTRUCTION

Defendant argues that the trial court erred by telling the jury that the contract was ambiguous. It is Defendant's contention that this instruction "left the jury with no ability to make a determination that the terms of the contract were clear and easily understandable."

We find this contention unavailing for two reasons. First, Defendant cited no authority in support of his argument. *See* Tenn. R. App. P. 27(a). Further, "whether contractual language is ambiguous, and therefore requires interpretation or construction, is a question of law to be decided by the court." *Captain D's Realty, LLC v. EP-D, Ltd.*, No. W2012-02142-COA-R3-CV, 2013 WL 1803741, at *6 (Tenn. Ct. App. Apr. 30, 2013) (citing *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL

5870386, at *5 (Tenn. Ct. App. Nov. 21, 2012)). Thus, we find no error in the trial court's instruction.

## V. ATTORNEYS' FEES

Defendant challenges the attorneys' fees awarded to Plaintiff on two grounds. First, it contends the trial court erred by awarding Plaintiff attorneys' fees for claims on which she did not prevail. Additionally, Defendant contends the amount was excessive.

## A.

Tennessee courts adhere to the "American Rule" when considering claims for attorneys' fees. *Tennessee State Bank v. Mashek*, 616 S.W.3d 777, 812 (Tenn. Ct. App. 2020); *see Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (explaining that "[u]nder the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case.").

Here, Paragraph 13 of the Agreement provides, in pertinent part:

In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

Although Plaintiff prevailed on only two out of four claims, the trial court determined that Plaintiff was entitled to fees incurred in prosecuting all four claims because the claims were "based on or related to the Agreement" and "arose out of the same operative facts." We agree.

When claims for relief are based on a common core of facts or related legal theories, Tennessee courts have used a result-oriented "common core of facts" analysis:

In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . In these circumstances the fee award should

not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Crescent Sock Co. v. Yoe*, No. E2015-00948-COA-R3-CV, 2016 WL 3619358, at *8 (Tenn. Ct. App. May 25, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)).

Defendant, however, relies upon a more recent decision by this court, *Tennessee State Bank v. Mashek*, 616 S.W.3d 777 (Tenn. Ct. App. 2020), to contend that "[w]hile Blalock's claims are clearly related to one another, this inter-relation is not enough to allow for the Trial Court to award all fees incurred in the litigation without differentiation between the claims." In *Mashek*, this court differentiated between fees incurred in the enforcement of a promissory note and those incurred in a reformation action on a deed of trust that secured the same note. *Id*. at 812–13. Having reviewed *Mashek* and compared the facts of that case to those at issue here, we find Defendant's reliance on *Mashek* misplaced.

In the case at bar, there is only one contract at issue, the Agreement. Conversely, in *Mashek*, the bank sought to enforce and/or reform its rights under three separate agreements: the Promissory Note, the Executed Deed of Trust, and the Recorded Deed of Trust. *Id*. at 812. Significantly, in addition to "an ordinary foreclosure action," the bank sought to reform the Executed Deed of Trust and the Recorded Deed of Trust to correct mistakes caused by the bank or its agents in drafting and in making subsequent and unilateral alterations to the loan documents. *Id*. This court determined that the Note was enforceable, but that the Executed Deed of Trust and the Recorded Deed of Trust were unenforceable due to the actions of the bank. *Id*.

On appeal, Mr. and Ms. Mashek contended that the bank's actions should have barred the bank from recovering any of its attorney's fees, including those related to the enforcement of the Promissory Note. *Id*. Conversely, the bank contended that the trial court erred by denying its request for the balance of the attorneys' fees and legal expenses it requested. *Id*.

With regard to the bank's claim for attorneys' fees in *Mashek*, after determining that the bank was precluded from enforcing the Executed Deed of Trust and the Recorded Deed of Trust, this court determined that the bank was entitled solely to those attorneys' fees and expenses related to seeking a judgment based on the Note. *Id*. Accordingly, we affirmed the trial court's decision to deny any attorneys' fees and expenses to the bank for litigation that the court found to be caused by the bank's mistakes in drafting and subsequent unilateral alterations to the loan documents. *Id*.

In its brief on appeal, Defendant cites to *Mashek* and states, "It is difficult to conceive of litigation more tightly bound together than one with one count to enforce a promissory note and another count regarding the deed of trust securing the promissory note and which was executed as part of the same transaction as the note." Defendant argues, "Certainly, the Note and the Deed of Trust [were] part of one set of 'operative facts' and ar[o]se out of the same transaction between the parties." We respectfully disagree. Although the legal proceedings to "reform" the Deed of Trust were related to the bank's claim on the Promissory Note, the facts and legal theories in the distinct claims at issue in *Mashek* did not arise out of "the same operative facts" as in the case at bar.

Unlike the distinct claims asserted by the bank in *Mashek*, the case at bar is consistent with the essential factors to be considered in a result-oriented "common core of facts" analysis. *See Yoe*, 2016 WL 3619358, at *8. All of Plaintiff's claims were "based on or related to" the Agreement, arose out of a common core of facts, or were based on related legal theories. *See id*. Accordingly, we agree with the trial court's determination that Plaintiff was entitled to fees incurred in prosecuting all four claims because the claims were "based on or related to the Agreement" and "arose out of the same operative facts."

B.

We must now consider Defendant's contention that the attorney's fee award was excessive. More specifically, Defendant contends "a proper analysis of the factors that should be taken into account to award attorney's fees was not addressed by the Trial Court particularly in relation to the degree of success and the amount of fees obtained."

The amount of attorney's fees to award is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the discretion of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard does not immunize a lower court's decision from any meaningful appellate scrutiny:

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Id*. at 524 (citations omitted).

In evaluating the reasonableness of an award of attorneys' fees, a trial court "must consider the factors provided in Tennessee Supreme Court Rule 8, RPC 1.5." *Ellis v. Ellis*,

621 S.W.3d 700, 708 (Tenn. Ct. App. 2019) (citing *Wright ex rel. Wright*, 337 S.W.3d at 185). Some of the factors to be considered, to the extent they are relevant, when determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client; [and]

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and]

(8) whether the fee is fixed or contingent[.]

Tenn. Sup. Ct. R. 8, RPC 1.5.

Along with her motion for discretionary costs and motion to award attorneys' fees, Plaintiff included an itemized list of her discretionary costs, itemized invoices showing the fees incurred, an affidavit from her attorney, and an affidavit from attorney Gary Patrick. Mr. Patrick gave his opinion that the rates charged were customary and reasonable under the factors in Tenn. Sup. Ct. R. 8, RPC 1.5.

In its order, the trial court acknowledged that the amount of attorneys' fees sought was "more than substantial" and contrasted "significantly with the amount which was in controversy." Nonetheless, the court found other factors supported the amount requested:

**The Time and Labor Required, The Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly**

The relationship between these parties was bitterly contentious. Legal theories were overly creative. Discovery was excessive. The issues of novation and the interpretation of the contract were approached in novel ways which required significant research and undertaking. Because of the approach the parties took to the case, a high level of skill was necessary to perform the legal service . . . . The file as a whole consumed vast amounts of

- 14 -

attorneys' time even though the amount in controversy may not have justified it. Issues bled into each other and no issue could be addressed in the trial preparation arena separate from the others. Neither party is in a strong position from which to contest the number of hours, hourly rate or amount or fees as the fees on both sides were substantial and the rates comparable. While the Court may not view having two attorneys at virtually all court appearances [as necessary], that was the practice of both sides.

## The Likelihood, if Apparent to the Client, that the Acceptance of the Particular Employment will Preclude other Employment by the Lawyer

It is unlikely any party anticipated that the acceptance of this particular employment would preclude other employment by the lawyers even if it did so.

## Fee Customarily Charged

The rates charged in this case are common in this locality for similar legal services. However, the fee charged for this type of litigation is not consistent with fees for this type of litigation normally. The litigation itself was not common.

## The Amount Involved and the Results Obtained

The monetary amount involved is not substantial. The results obtained were to prove Ms. Blaylock's point that Mr. Issa could not bully her. The Court has no evidence as to whether or not precluding this kind of conduct was the intent of the [attorneys' fee] clause involved. That the victory itself was satisfactory to Ms. Blaylock may or may not be accurate.

## The Time Limitations Imposed by the Client or by the Circumstances

Each time limit placed on the parties was exceeded or expanded.

## The Nature and Length of the Professional Relationship with the Client

There is no evidence Ms. Blaylock had a relationship with her attorneys' firm outside of this contract. The relationship between Ms. Issa and his attorneys is longstanding.

## The Experience, Reputation and Ability of the Lawyer or Lawyers Performing the Services

All lawyers in this case are extremely competent and the amount of the hourly rate is not questioned.

## Whether the Fee is Fixed or Contingent

The fee in this case is an hourly fee. The Court has no evidence that the fees were increased at the impetus of the attorneys. The fees incurred by each party validate the reasonableness and necessity of the fees on the other side.

Based on these findings, the trial court concluded that the requested amount of $189,188.00 for attorneys' fees was reasonable. The court also found that Plaintiff's request for $5,620.60 in discretionary costs complied with Tenn. R. Civ. P. 54.04.

Plaintiff then filed a motion to award supplemental fees in the amount of $24,546.47 and additional expenses in the amount of $2,567.50. As with the first request, Plaintiff included a detailed description of services provided, itemized invoices showing the fees incurred, and an affidavit from Plaintiff's attorney. Although the trial court found an award for the additional expenses was appropriate, the court determined that the requested amount of additional attorneys' fees was excessive and reduced it to $9,500.

Having considered the relevant factors under Tennessee Supreme Court Rule 8, RPC 1.5 and having reviewed the trial court's decision pursuant to the three-pronged factors set forth in *Lee Medical*, we find that the factual basis for the court's decisions is properly supported by evidence in the record, the trial court properly identified and applied the most appropriate legal principles applicable to the decision, and the trial court's decision was within the range of acceptable alternative dispositions. *See Lee Med., Inc.*, 312 S.W.3d at 524. For these reasons, we affirm the trial court's decision to award Plaintiff $201,255.50 in attorneys' fees and expenses.

## VI. ATTORNEYS' FEES ON APPEAL

Finally, Plaintiff requests an award of attorneys' fees for time spent on appeal. Generally, when a party requests an award of appellate attorneys' fees, we may (1) deny the request; (2) grant the request and set the amount; (3) grant the request and remand to the trial court to set the amount; or (4) remand to the trial court to determine whether the award should be made and, if so, in what amount. *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 411 n.2 (Tenn. 2006). But when the parties' valid and enforceable agreement requires an award of reasonable attorneys' fees to a prevailing party, appellate courts must enforce the agreement. *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017).

As the prevailing party, Plaintiff is entitled "to recover all costs of such enforcement, including reasonable attorney's fees." Thus, we grant Plaintiff's request for an award of her appellate attorneys' fees and remand to the trial court to set the amount.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against G.T. Issa Construction, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.